[No. 19816. Department One. July 26, 1926.]

R. W. CAIN, *Respondent,* v. HARRY NORMAN *et al.,* *Appellants.*[1]

[1] SALES (53)—RESCISSION BY BUYER—MISREPRESENTATIONS. A finding of fraud in the sale of a half interest in a real estate business is sustained by evidence that the business was represented to plaintiff, who was inexperienced, to be a profitable one when in fact it had made no profits for some time and was very shortly thereafter discontinued.

[2] SAME (60)—ACTIONS—TIME TO SUE AND LACHES. The lapse of six weeks after first discovering that representations inducing the sale of a business were false and fraudulent does not bar an action for rescission for fraud.

[3] SAME (59)—RESCISSION BY BUYER—CONDITIONS PRECEDENT—RESTORATION OF GOODS. In an action for the rescission of a sale of the half interest in a real estate business, the defense that plaintiff did not put defendant *in statu quo* by tendering a return of the office furniture, is not available where plaintiff left the same in the hands of the defendant who sold it and appropriated the proceeds; and under such circumstances the complaint may be deemed amended to allege a tender.

[4] SAME (59). In an action for rescission of a sale of a half interest in a real estate business, for fraudulent representations inducing the sale, the fact that plaintiff did not tender a return

[1] Reported in 248 Pac. 71.

of the money received by him in the business is not vital to a recovery, where the matter was not mentioned in the pleadings, since the court could and should allow the same as an offset against plaintiff's recovery of the purchase price.

[5] COSTS (65)—ON APPEAL—MODIFICATION OF JUDGMENT. Costs of appeal, on allowing a modification of the judgment, will not be allowed to appellant where the error of the trial court was due in some degree to his fault.

∘ Appeal from a judgment of the superior court for King county, Paul, J., entered October 14, 1925, upon findings in favor of the plaintiff in an action for the rescission of a contract of partnership, tried to the court. Modified.

*James A. Dougan,* for appellants.

*James R. Chambers,* for respondent.

FULLERTON, J.—For sometime prior to July 22, 1924, the appellant, Norman, conducted a real estate business in the city of Seattle. On the date given, he sold a half-interest in the business to the respondent, Cain, for a cash consideration of $1,250, and entered into written articles of partnership with him by the terms of which the parties agreed to continue the business thereafter as partners, sharing the profits and losses. The agreement further provided that each of the partners should devote his entire time to the business, and Cain, in pursuance of this part of the contract, entered immediately upon the work. He continued therein until September 11, 1924, when he withdrew therefrom, leaving the business with Norman. At the time of the withdrawal, he served a written notice on Norman to the effect that he had rescinded the contract of purchase, and therein demanded a return of the money he had paid on the purchase price. Norman refused to recognize his right to rescind, and refused to repay any part of the purchase price. The respondent thereupon began the present action to enforce a rescission

and recover the purchase price. Issue was joined on his complaint, and the cause was tried by the court sitting without a jury as an action of equitable cognizance, resulting in a judgment in favor of the respondent.

[1] The respondent, prior to the purchase, was without experience in the real estate business and was without knowledge of the extent of the business conducted by Norman, and made the purchase in reliance upon the representations of Norman as to the earnings and value of the business. His ground of rescission was that these representations were false and fraudulent, and one of the assignments of error is that he failed to sustain the burden of proof on this branch of his case. But on this issue we are constrained to agree with the conclusion of the trial court. As we read the evidence, the business had made no profit for some considerable time prior to the purchase by respondent, and during the respondent's connection with it, the earnings were not sufficient to take care of the overhead charges. It appeared, furthermore, that the business was discontinued by Norman shortly after the respondent withdrew therefrom.

[2] The appellant, however, urges that there was error in allowing a rescission, even conceding that the purchase was induced by false representations. The first contention under this head is that the respondent did not act with sufficient promptness after discovering the fraud. The contention has its foundation in the respondent's own testimony. On his direct examination, his testimony was that he discovered the concern had no business shortly after he entered into it, and complained from time to time to Norman of the conditions, making a final complaint shortly before he withdrew from the business. His testimony does not

show what answer was made by Norman to the first of his complaints, but he testifies that to the last one Norman admitted that the ''business was rotten,'' and suggested that they make a change of location, and that it was this that finally induced him to believe that he had been deceived. On his cross-examination, he testified that he discovered there was no business after the first week of his participation therein, which was some six weeks before he announced his intention to rescind. But there can be no hard and fast rule upon this question. Each individual case must rest upon its own circumstances. A lapse of time which would be unreasonable under certain circumstances might be an insufficient lapse under others. The only general test that can be laid down is that the party rescinding must act with reasonable promptitude, measured by the circumstances of the particular case. In this instance, the respondent was permitted, even if he was not required, to give the business a fair trial before reaching a definite conclusion, and we think he did no more than exercise this privilege.

[3] Included in the sale of the business, were certain office fixtures and certain furniture, and these the respondent did not tender to the appellant in his complaint. It is argued that this is fatal to a recovery, on the principle that a party seeking to rescind must place the other party, or offer to place him, *in statu quo*. But the respondent, on quitting the business, left the property with the appellant who thereafter sold it and appropriated the proceeds of the sale to his own use. Since the respondent did not, after quitting the business, and does not now, lay claim to the property, but concedes the appellant's right to it, the appellant is *in statu quo* in so far as this property is concerned. The objection then raises the somewhat technical question, whether it is fatal to the respondent's cause of

action to fail to make the tender in his complaint. We cannot so conclude. Under the circumstances, the omission was nothing more than a mere defect in the complaint, capable of cure by amendment, and will be considered as so cured after a trial upon the merits.

[4] During the time the respondent was engaged in the business, he made a sale of property the commission on which was $199.50. Of this sum, by agreement with his partner, he detained for his own use $174.50. Neither the complaint nor the answer disclosed the fact. It first appeared in the evidence on the cross-examination of the respondent, but was seemingly given no further heed either by the court or counsel; at any rate it was not deducted from the amount of the recovery allowed by the court. The appellant contends that it was the respondent's duty to tender a return of the money in his complaint and deposit it with the clerk of the court, and that his failure so to do is fatal to his right of recovery. But here again we think the omission not fatal.

In the early case of *Wood v. Nichols*, 6 Wash. 96, 32 Pac. 1055, 35 Pac. 140, a suit to rescind a sale of real property, it is true we held that the plaintiff was in no position to maintain the suit because he had not tendered back all of the money he had received on the purchase price. But there was a dissenting opinion in which it was said that the action should not be dismissed for the reason assigned; that, since the proceeding was in equity, the court had jurisdiction to grant such relief as the plaintiff was entitled to on conditions which would fully protect the rights of the other parties. In our subsequent cases we have followed the rule of the dissenting opinion, rather than the rule of the majority. In *Sanford v. Royal Ins. Co.*, 11 Wash. 653, 40 Pac. 609, we held that in suits in equity, where a bill is filed for a rescission, a restoration of the con-

sideration received is not necessary before suit, it being sufficient that such restoration be provided for in the decree. In *Tyner v. Stults*, 102 Wash. 168, 172 Pac. 850, the suit was to rescind because of fraudulent misrepresentations on the part of the vendor. Touching the question now in hand, we used this language:

"But appellants have contended from the beginning, and now contend, that no action can be maintained without proof of a previous tender, and that the decree of the court that a rescission be had, if respondent shall within ten days put appellants *in statu quo,* does not meet the demands of the law. The position of counsel is sustained by ample authority, but we have heretofore followed after those cases which hold that it is within the power of the court to protect all the rights of the parties by its decree, and that a previous tender, or offer to rescind, is not necessary under a state of facts such as we have before us. We said in *Snarski v. Washington State Colonization Co.*, 53 Wash. 221, 101 Pac. 839, quoting from 24 Am. & Eng. Ency. Law (2d ed.), p. 621: 'Whether the complaint in a suit for rescission must, as a condition precedent to relief, have offered or tendered restitution to the defendant prior to the bringing of the suit, is a matter upon which the authorities are conflicting. The rule of the better considered cases is, that it is sufficient that the plaintiff make his offer to restore or to do equity, in his bill or complaint, and shows therein that he has substantially preserved the *status quo* on his part so as to be able to fulfill his offer. This rule proceeds upon the principle that it is always within the power of a court of equity to require that the person invoking its aid shall submit to equitable terms as a condition of relief, and that the parties being properly before the court, the court may impose upon them any terms which may be just and equitable in the premises, and may enforce compliance therewith.' See, also, *Colpe v. Lindblom*, 57 Wash. 106, 106 Pac. 634; *Angel v. Columbia Canal Co.*, 69 Wash. 550, 125 Pac. 766; *Robbins v. Wyman, Partridge & Co.*, 75 Wash. 617, 135 Pac. 656; *Odell v. Burnham*, 61 Wis. 562, 21 N. W. 635; *Owen v.*

*Jones,* 68 Ore. 311, 136 Pac. 332; *Gamblin v. Dickson,* 18 Idaho 734, 112 Pac. 213; *Knappen v. Freeman,* 47 Minn. 491, 50 N. W. 533.''

These later cases conclude the question against the appellant. If in the final adjudication the equities of the parties can be protected, failure to make formal tenders is not fatal to the proceeding. Under the circumstances here shown, the equities of the case would have been fully satisfied by allowing the reduction of this sum from the amount of the recovery, and this should have been the action of the trial court. Perhaps, it did not do so because its attention was not specifically directed to it, but the appellant is nevertheless entitled to have the judgment corrected in this respect.

We have not overlooked the argument of the respondent to the effect that his losses in time and wasted effort will more than offset the sum here found to be not his in right, but this is a matter we cannot consider. Conceding that he could recover in this form of proceeding for his loss of time, a question we do not determine, there is nothing in the evidence on which to base the amount of such a recovery.

[5] Our conclusion requires a modification of the judgment. The order will be, therefore, that the judgment be reversed and the cause remanded with instructions to enter a judgment for the amount of the original judgment less the sum of $174.50. Since, however, we think the error of the trial court was due in some degree to the appellant, costs will not follow the order of reversal. In this court neither party will recover costs.

Tolman, C. J., Holcomb, and Askren, JJ., concur.

Bridges, J. (concurring)—Because of the peculiar facts of this case, I can concur in the result reached in

the foregoing opinion, but I cannot agree with the assertion that, in a suit to rescind a sale on the ground of misrepresentations, the person seeking to rescind is not required under any circumstances to return or offer to return the thing or things he received by virtue of the sale, as a condition to maintaining the suit. I have always supposed that the rule was directly contrary, and I am still of the belief that it should be. If another sells to me his automobile, or his horse, or any piece of machinery, or other kind of personal property, and I seek, because of misrepresentations, to annul the sale, it would seem that I should not be permitted, pending the final determination of the suit, to retain possession of and possibly use the automobile, horse, machinery or other personal property which I received from my vendor. Seeking a rescission, and at the same time holding possession of the thing which has been sold me, are, to my mind, entirely inconsistent positions. The vendor is not called upon to pay back the purchase price which he has received until the vendee, who is seeking rescission, has offered to do equity and turn back the property which he received. Of course, there are exceptions to this general rule, as where the property has been lost or destroyed without the fault of the vendee, and because of such circumstances he is unable to place his vendor *in statu quo*.

The doctrine that rescission can be had only after the party seeking to rescind has offered to return that which he received, or so much of it as he is able to return, thus putting the parties *in statu quo* as nearly as can be done, is supported, it seems to me, by the very great weight of authority. 24 R. C. L. 322, and cases there cited; 39 Cyc. 1378, 1424, and cases there cited; *Lake Shore & Michigan Southern R. Co. v. Richards,* 152 Ill. 59, 38 N. E. 773, 30 L. R. A. 33, and note; *White v. Miller,* 132 Iowa 134, 109 N. W. 465,

8 L. R. A. (N. S.) 727, and note; *Frink v. Thomas*, 12 L. R. A. 239.

It is said that a court of equity can in its decree make such conditions as justice requires, thereby requiring the rescinding party to return the property he received. So it can. But that does not get at the root of the question, because the vendor is entitled to have an opportunity to accept the rescission without the trouble and expense of a rescission suit, and because, pending the determination of the suit, the vendor is, and the vendee is not, entitled to the possession of the thing sold.