[No. 25964.   Department Two.   March 30, 1936.]

MOGUL LOGGING COMPANY, *Appellant*, v. SMITH LIVESEY WRIGHT COMPANY, *Respondent*.[1]

*Loomis Baldrey,* for appellant.
*Sather & Livesey,* for respondent.

BLAKE, J.—On March 7, 1928, plaintiff and defendant entered into a contract wherein plaintiff agreed to

[1]Reported in 55 P. (2d) 1061.

sell and defendant agreed to buy certain land in Whatcom county. The contract price was seven thousand dollars, of which five hundred dollars was paid when the contract was executed. The balance was payable at the rate of twenty-five dollars per month, with interest, until March 7, 1933, when the entire balance became due. The defendant was obligated to pay taxes.

Payments of principal and interest were made up to December 7, 1931. Defendant had theretofore paid taxes for the first half of 1930. Thereafter, no payments were made.

In November, 1933, all payments under the contract having become due, plaintiff tendered a deed to defendant and demanded the balance of the purchase price. Upon defendant's refusal to pay, this action was brought to enforce the contract and recover the balance due on the contract.

The covenant of the vendee to purchase was in the following words:

". . . The party of the second part, in consideration of the premises, hereby agrees to pay, subject to the conditions hereinafter set forth, . . . the remaining principal."

The contract contained a forfeiture clause, which, coupled with what we have just quoted, forms the basis of this controversy. After providing that, upon default by the vendee, all payments theretofore made should be forfeited to the vendor, the forfeiture clause continued:

"And upon surrender by second party to said first party, the second party's copy of this contract or a quit claim deed to the property herein described, duly executed by the second party, this contract shall be considered by both parties as null and void in every tenor and effect."

After the action was commenced, the defendant tendered to plaintiff a quitclaim deed and its copy of the contract. The defendant took the position that, under the above quoted provision of the contract, it was discharged from further obligation on the purchase price. After hearing the evidence, the trial court took that view, and entered judgment dismissing the action. Plaintiff appeals.

The substance of appellant's contentions is that: (1) Reading the forfeiture clause as a whole, it cannot be construed to in any manner circumscribe the right of the vendor to maintain an action for the balance of the purchase price; (2) in any event, the quoted portion of the clause circumscribed only conditionally the vendor's right to maintain an action for the purchase price; and (3) the vendee failed to comply with the condition, in that it was guilty of laches in tendering the quitclaim deed and contract, and was in default at the time tender was made.

This court has held that, under a clause merely providing for forfeiture of payments made, upon default by the vendee, the vendor does not lose his right to maintain an action for the balance of the purchase price. *Asia Investment Co. v. Levin,* 118 Wash. 620, 204 Pac. 808, 32 A. L. R. 578. But where the contract in terms limits the right of the vendor to forfeiture of purchase money paid, he cannot maintain an action for the purchase price. *Wright v. Suydam,* 72 Wash. 587, 131 Pac. 239. The fact that limitation of appellant's right to maintain an action for the purchase price was conditional upon tender of deed or contract by respondent does not affect the applicability of the rule, if respondent complied with the condition.

To determine whether respondent did or did not comply with the condition requires an examination of additional facts as found by the court. We shall ac-

cept these facts as found by the court, since, in the main, the findings are upon disputed testimony, and we are unable to say that the evidence preponderates against them.

It appears that, at about the time appellant and respondent entered into this contract, respondent entered into a contract to sell the land to one Wyman. Just when appellant was advised of this sale to Wyman is not clear. But it is certain that appellant knew of it some time before respondent defaulted in its payments to appellant. The court found that Wyman defaulted in his contract with respondent shortly before respondent defaulted in its payments to appellant. It also found that respondent advised appellant of Wyman's default; that, in consequence, respondent could not carry out its contract with appellant; that respondent advised appellant that it was willing to surrender its contract and execute a quitclaim deed.

The court further found that appellant's officers asked respondent's officers not to throw up the contract, but to see if they could not induce Wyman to carry out his contract with respondent; that the officers of appellant also suggested to the officers of respondent that they might find another purchaser; and that the matter stood thus until appellant tendered a deed to respondent and demanded the balance of the purchase price in November, 1933. The court found that, in the meantime, no demand had been made for further payments on the contract, and that respondent at all times was ready and willing to surrender its contract and execute a quitclaim deed, and from time to time so advised appellant.

Under the facts so found by the court, we do not think that respondent was chargeable with laches, or that its tender of deed and contract after suit was started came too late. When conduct of one of the

parties to a contract is the inducing cause of the failure of the other party to comply strictly with the terms of the contract, the party inducing the failure cannot take advantage of it. 6 R. C. L. 374; *Williams v. Yellow Pine Box & Lumber Co.,* 126 Wash. 380, 218 Pac. 245; on rehearing, 129 Wash. 642, 225 Pac. 433. Furthermore, when one party to a contract notifies the other that he does not consider himself bound by the contract, the one so advised may, by delay in asserting his rights, be chargeable with laches and so lose his right to specific performance. Pomeroy's Specific Performance of Contracts (3d ed.), § 412; *Marsh v. Lott,* 156 Cal. 643, 105 Pac. 968; *Ketcham v. Owen,* 55 N. J. E. 344, 36 Atl. 1095; *Wolf v. Great Falls Water-Power etc. Co.,* 15 Mont. 49, 38 Pac. 115; *Ritson v. Dodge,* 33 Mich. 463; *Hayne v. Fenton,* 321 Ill. 442, 151 N. E. 877; *DeHuy v. Osborne,* 96 Fla. 435, 118 So. 161; *McCabe v. Matthews,* 155 U. S. 550, 15 S. Ct. 190.

It follows that, under such circumstances, the right to rescind could not be lost by failure to make a tender before suit is brought, provided, of course, that the *status quo* can be restored. *Snarski v. Washington State Colonization Co.,* 53 Wash. 221, 101 Pac. 839; *Angel v. Columbia Canal Co.,* 69 Wash. 550, 125 Pac. 766; *Tyner v. Stults,* 102 Wash. 168, 172 Pac. 850; *Cain v. Norman,* 140 Wash. 31, 248 Pac. 71.

But appellant contends that respondent could not put it in *status quo* because of the outstanding contract with Wyman. The court found, however, that, prior to the commencement of the suit, Wyman and respondent had orally agreed to a rescission and cancellation of their contract. It further found that, at the time of trial, respondent tendered into court the duplicate copies of the Wyman contract (neither of which had been recorded), together with a blank assignment from Wyman. Under these findings, it is

clear that the contract of respondent with Wyman, having been rescinded, could not prevent restoration of the *status quo* as between appellant and respondent upon the rescission and cancellation of their contract. *Gerard Fillio Co. v. McNair,* 68 Wash. 321, 123 Pac. 462; *Oregon & W. R. Co. v. Elliott Bay Mill & Lumber Co.,* 70 Wash. 148, 126 Pac. 406; *Stoner v. Fryett,* 91 Wash. 89, 157 Pac. 213; *Cain v. Norman, supra.*

Judgment affirmed.

MILLARD, C. J., BEALS, MAIN, and HOLCOMB, JJ., concur.