[No. 1616–3.   Division Three.   April 11, 1977.]

PATRICK A. ARTZ, ET AL, *Respondents,* v. EDWARD C.
O'BANNON, ET AL, *Appellants.*

*Robert S. Day* and *Peterson, Taylor, Day & Shea,* for appellants.

*Michael Pickett* and *Bennett, Carroll & Pickett,* for respondents.

GREEN, J.—Plaintiffs, Patrick and Margaret Artz, executed an earnest money receipt in which they agreed to purchase certain real property from defendants, Edward and Bonnie O'Bannon. When these defendants refused to

perform, plaintiffs brought this action for specific performance and, alternatively, for damages and refund of their earnest money. The trial court entered judgment for plaintiffs in the amount of the earnest money, but refused to grant specific performance or damages. The court also refused to award attorney's fees to either party. From this judgment, both parties appeal challenging certain findings of fact and conclusions of law.

The O'Bannons listed for sale their farm acreage, house and outbuildings with Robert Tippett of Tippett Land and Mortgage Company. On May 16, 1973, the Artzes executed an earnest money receipt to purchase the property for $85,000, payable by $2,000 earnest money, $19,250 down payment at the time of closing, and the balance of $63,750 by contract according to terms outlined in the agreement. The earnest money receipt was accepted and signed by the O'Bannons. The parties agree that the transaction was to be closed no later than September 1, 1973.

The Artzes expected to raise the down payment by prompt sale of their home, permitting a closing in June 1973. Believing the sale would close early, the O'Bannons permitted them to take possession of some of the farm acreage in May. However, plans for an early closing were frustrated when several proposed sales of the Artz home "fell through." In mid–July, Mrs. Artz informed Mr. O'Bannon that another prospective purchaser for their home was attempting to secure financing. She inquired whether Mr. O'Bannon would be willing to extend the September 1 closing date if additional time was necessary to complete this sale. Mrs. Artz testified that Mr. O'Bannon indicated "that if he was sure the money was there . . . for a certain period of time he would be willing to go along with it." However, the prospective sale did not materialize. The Artzes had no further conversation with Mr. O'Bannon concerning an extension of the September 1 closing date.

In mid–August, Mr. Tippett, aware of the Artzes' inability to sell their home, contacted Mr. O'Bannon concerning the possible need for an extension of the closing date. Mr.

O'Bannon set forth specific conditions to be met before he would consider an extension. These conditions were communicated to Mr. Artz but were not met. At trial, he testified that he "felt that they [the conditions] would be taken care of at the time of closing." The Artzes then began pursuing a prior application to C.I.T. Financial Services for a mortgage loan for the down payment. Mr. Artz claims that Mr. Tippett told him there would be no problem with the O'Bannons regarding an extension. Mr. Tippett's testimony does not corroborate this claim, but rather, contradicts it. Mr. Tippett testified that he contacted C.I.T. during the third week in August and was informed the application was awaiting approval. Thereafter, he contacted Mr. O'Bannon regarding a possible extension, but none was given because, as he testified, the O'Bannons were very skeptical at this point since so many of the Artzes' prospective sales had fallen through and this might be another disappointment.

The C.I.T. loan was approved on August 30, but the funds could not be disbursed for several days. On August 31, Mr. Tippett informed Mr. O'Bannon of the loan approval and that the transaction could not close on September 1. Mr. O'Bannon responded, "They don't have the money, in other words", and stated that he was going out of town and would consider "this as a whole new deal" when he returned. Mr. Tippett further testified that he did not tell the Artzes they would have an extension when the O'Bannons returned and that the O'Bannons did not in fact give an extension. To the contrary, Mr. Artz testified that Mr. Tippett told him the O'Bannons would work everything out when they came back.

While the O'Bannons were out of town, plaintiffs offered payment to Mr. Tippett by check postdated to the date the funds from C.I.T. could be received. This offer was refused. Mr. Artz testified that on September 17 he offered Mr. O'Bannon the down payment which was also refused. The O'Bannons subsequently sold the subject property plus an additional 6 1/2 acres to another party for $95,000.

First, plaintiffs assign error to the following findings of fact:

### V.

There was no agreement among the parties to extend the closing date of the Earnest Money Agreement.

### VII.

The plaintiffs were not ready, able and willing to perform the Earnest Money Agreement on or before September 1, 1973.

### VIII.

The defendants did not waive compliance with the requirements that the transaction close on or before September 1, 1973.

### IX.

There were no actions or representations of defendants, relied upon by the plaintiffs, which led the plaintiffs to fail to close the transaction on or before September 1, 1973.

It is contended that these findings are not supported by substantial evidence. Plaintiffs argue that the court should have found that defendants' action and conduct indicated a willingness to grant an extension which was relied upon by plaintiffs and constituted an implied agreement to extend or waive the closing date. We disagree.

Findings of fact that are actually conclusions of law will be treated as such, *State v. Reader's Digest Ass'n, Inc.*, 81 Wn.2d 259, 501 P.2d 290, *appeal dismissed,* 411 U.S. 945, 36 L. Ed. 2d 406, 93 S. Ct. 1927 (1972); findings that are "fact" findings will not be disturbed on appeal if supported by substantial evidence. *Sylvester v. Imhoff,* 81 Wn.2d 637, 503 P.2d 734 (1972); *True's Oil Co. v. Keeney,* 76 Wn.2d 130, 455 P.2d 954 (1969). Here, the "fact" findings are supported by substantial evidence and support the conclusions of law. As to plaintiffs' other argument, it is the rule that the seller must unequivocally evince an intention to waive the time limit of the earnest money receipt, or by his conduct lead purchasers to their default to support waiver or estoppel. *Nadeau v. Beers,* 73 Wn.2d 608, 440 P.2d 164 (1968); *Birkeland v. Corbett,* 51 Wn.2d 554, 320 P.2d 635 (1958); *Bowman v. Webster,* 44 Wn.2d 667, 269

P.2d 960 (1954). The evidence viewed in a light most favorable to the defendants does not support the contention that defendants waived the time limit or misled plaintiffs into believing an extension would be granted.

Second, plaintiffs assign error to the following finding of fact:

### VI.

The obligation[s] of the defendant to furnish proof of title and deliver the real estate contract were not pre-conditions to the plaintiffs' obligation to pay the balance of the down payment.

It is contended that this finding is erroneous because the earnest money receipt[1] required delivery of a preliminary commitment for title insurance and a copy of the real estate contract as conditions precedent to plaintiffs' obligation to tender the down payment. In the circumstances of this case, we disagree.

Assuming arguendo that defendants' obligations to provide title insurance and deliver a real estate contract are conditions precedent, the obligations did not arise in this case. Plaintiffs' consistent inability to obtain the amount of down payment communicated to defendants throughout several months, and finally just prior to September 1, excused the conditions precedent. Thus, plaintiffs cannot now claim failure of conditions precedent to support performance where their own conduct excused performance of the conditions precedent. 5 S. Williston, *Contracts* § 677, at 224 (3d ed. 1961); *Mogul Logging Co. v. Smith Livesey Wright Co.*, 185 Wash. 509, 512–13, 55 P.2d 1061 (1936). The record is void of any evidence that plaintiffs' failure to raise their down payment by September 1 was in any way

---

[1] "A title insurance policy from a reliable company . . . is to be furnished purchaser in due course at seller's expense; preliminary to closing, seller may furnish a title insurance company's title report . . .

". . .

"But if said sale is approved by the seller and title to the said premises is insurable or marketable and purchaser neglects or refuses to comply with any of said conditions within ten days after the said evidence of title is furnished and to make payments promptly . . ."

caused by defendants' failure to supply the preliminary commitment for title insurance and copy of the contract. Thus, finding of fact No. 6 is not erroneous.

Third, plaintiffs' claimed error in denying specific performance is without merit. This denial is supported by the findings and the evidence.

On cross–appeal, defendants contend that the court erred in finding that:

> Under all the circumstances, it would be harsh and inequitable to permit the defendants to declare a forfeiture of the $2000 earnest money.

The earnest money receipt provides that upon the purchasers' failure or refusal to complete the transaction, the earnest money shall be forfeited as liquidated damages. "Unless it be demonstrated that provisions for liquidated damages are actually a penalty . . . [the] court will sustain them." *Jenson v. Richens,* 74 Wn.2d 41, 47, 442 P.2d 636 (1968). *See* 5 Williston, *Contracts* § 770, at 641 (3d ed. 1961). Here, there is no evidence that the liquidated damage provision constitutes a penalty; nor is there any evidence that the provision for forfeiture of the earnest money is so harsh or unconscionable as to invoke equity to deny its performance. Absent such evidence, or other defense to enforcement, the parties are bound by their contract. *Montgomery Ward & Co. v. Annuity Bd.,* 16 Wn. App. 439, 556 P.2d 552 (1976); *Kinne v. Kinne,* 82 Wn.2d 360, 510 P.2d 814 (1973); *Moeller v. Good Hope Farms, Inc.,* 35 Wn.2d 777, 215 P.2d 425 (1950).

Consequently, we must hold that the evidence does not support the trial court's finding; the court is bound to enter judgment forfeiting the earnest money in favor of the defendants.

Defendants also contend they are entitled to an award for attorney's fees and costs pursuant to the terms of the earnest money receipt. We agree. It provides that the prevailing party shall be entitled to recover reasonable attorney's fees to be fixed by the court. RCW 4.84.030 entitles

the prevailing party to costs and disbursements. Consequently, the defendants as the prevailing party are entitled to attorney's fees for trial and appeal to be fixed by the court, together with costs and disbursements as provided by statute.

Affirmed in part and reversed in part for further proceedings consistent with this opinion.

MUNSON, C.J., and McINTURFF, J., concur.

Petition for rehearing denied June 2, 1977.

Review denied by Supreme Court November 18, 1977.