[No. 31200-6-I.   Division One.   September 6, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH KESSLER, *Appellant*.

*Mary Jane Ferguson* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *David F. Thiele, Deputy,* for respondent.

BECKER, J. — Kenneth Kessler appeals his conviction for indecent liberties on the ground that he should have been allowed to complete his pretrial diversion agreement. He also claims that the State's actions denied him his right to a speedy trial. We affirm.

## I
### TERMINATION HEARING

When a disclosure by the 10-year-old victim led to Kessler's arrest, he signed a preprosecution diversion agreement with the Snohomish County Prosecutor.[1] Kessler confessed in writing to having sexually molested the victim, his stepdaughter, between March 1986 and August 1986. He agreed to enter treatment for sexual deviancy for 3 years at his own expense. The State agreed to be foreclosed from prosecuting him for the crime if, at the end of the 3-year period, Kessler had performed "all the terms and conditions" of the agreement. The State reserved the right, "if it believes that the defendant has violated the terms of this agreement" to revoke the agreement and proceed to trial, "if the Court so agrees".

The 3-year term of the diversion agreement was to end on November 1, 1991. Two weeks before — on October 18, 1991 — the prosecutor terminated Kessler from the diversion program for violating conditions 8, 9, and 17, and subsequently charged him with two counts of indecent liberties. Kessler moved to dismiss the charges, asserting that he had substantially complied.

Under *State v. Marino*, 100 Wn.2d 719, 674 P.2d 171 (1984), when a prosecutor terminates a defendant's participation in a preprosecution diversion agreement, the defend-

---

[1]This particular diversion program is nonstatutory. The prosecutor had no obligation to offer the option to Kessler or any other defendant.

ant has a due process right to have factual disputes resolved by a neutral factfinder because the rights at stake are similar to those involved in pretrial diversions and probation revocation. *Marino*, at 723. *Marino* further defines the role of the trial court as follows:

> Once the court has resolved the factual disputes, determining whether a violation of the agreement has occurred, it has a basis for reviewing the reasonableness of the prosecutor's decision to terminate. Clearly, the court is not in a position to require that prosecution be recommenced. Discretion to finally bring the case to trial still rests with the prosecutor. . . . We therefore find that the court's review of a prosecutor's termination decision should consist of assessing its reasonableness in light of the facts the trial court determines at hearing.
>
> A review for reasonableness requires the trial court to ascertain that facts exist that support a prosecutor's termination decision. Reviewing for a factual basis gives deference to a historically prosecutorial function without depriving an accused of independent judicial review of the evidence.

(Citations omitted.) *Marino*, at 725-26.

At the *Marino* hearing, the State presented two witnesses: Kessler's therapist, Michael O'Connell, and the program manager of the preprosecution diversion program, Craig Donaldson. From their testimony, the trial court learned that the incident precipitating Kessler's removal from diversion was a report from Theresa, his ex-wife, that he had been following her and her current boyfriend around and occasionally driving by their house and stopping to stare. Kessler had not told O'Connell or Donaldson about this conduct, which occurred in May 1991, until he admitted it in polygraph exams several months later.

The State had the burden of proving, by a preponderance of the evidence, that Kessler breached the agreement. *Marino*, at 725. Making findings of fact as required by *Marino*, at 727, the court determined that Kessler had violated conditions 8, 9 and 17, which provided as follows:

> 8. The defendant shall enter into, cooperate with and successfully complete specialized treatment for his sexual deviancy with Michael O'Connell . . ..
>
> 9. Treatment shall be at the defendant's expense and he shall keep his account current.

. . . .

17. The defendant shall have no contact with the victims of his sexual offenses. Contact is defined to include any verbal, written, in-person, or third party communications. Victims may be defined as primary victims . . . or secondary victims. . . . This condition may only be changed by the mutual agreement of the defendant's therapist, the victim's therapist and the Diversion Counselor.* Victims include primary victim [the girl] and secondary victim [the girl's mother].

*Before any occasional social (non-sexual) contact with secondary victim [the mother] will be approved, [the mother] will have to discuss such an arrangement with Ken's therapist and an agreement on the basis of any such arrangement will have to be reached. Any such arrangement would incorporate all the other provisions of this agreement.

Under *Marino,* the court's next task was to determine whether the violations supported the prosecutor's decision to terminate. Initially, the court believed its duty was to make a judgment de novo as to whether termination was reasonable. Using this standard, the court concluded termination was unwarranted, and granted Kessler's motion to dismiss the charges. When the State moved for reconsideration, the court reversed itself, deciding upon reflection that its role under *State v. Marino, supra,* was limited to a review of the prosecutor's action. The court could not say the prosecutor's decision was unreasonable though the court would have reached the opposite conclusion on its own.

At a subsequent stipulated trial the court . convicted Kessler of the two counts of indecent liberties.[2]

## II

### STANDARD OF REVIEW

■ *Marino* does not define the standard or scope of appellate review of the trial court's decision. The trial court's factfinding role is the same as in any other type of evidentiary hearing, whether it be a suppression hearing or a trial for breach of contract. We will therefore review the trial

---

[2]The court imposed a suspended sentence of 20 months for both counts, requiring Kessler to serve 180 days' partial confinement in the form of work release. The court also imposed an exceptional sentence of 3 years of community supervision based on Kessler's performance in prior treatment, his abuse of a position of trust within the family, and his commission of multiple offenses.

court's findings of fact by the usual standard of sufficiency of the evidence. *See State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994); *Artz v. O'Bannon*, 17 Wn. App. 421, 425, 562 P.2d 674, *review denied*, 89 Wn.2d 1008 (1977). Under this standard we "ascertain that facts exist that support a prosecutor's termination decision." *Marino*, at 726.

■ The trial court's decision upon reviewing the reasonableness of the prosecutor's decision to terminate is more like a legal conclusion, or a mixed question of fact and law, than an additional finding of fact. While the term "reasonable" in many contexts is applied by a factfinder, in this case the decision of the trial court calls for the application of legal principles of due process as guided by analogy to such contract principles as may be appropriate and helpful. *See, e.g., In re Palodichuk*, 22 Wn. App. 107, 109-11, 589 P.2d 269 (1978). Accordingly, we view the conclusion of reasonableness by the trial court as one that may be appealed as a matter of law. As *Marino* directs the trial court, we likewise review the prosecutor's decision to terminate, "assessing its reasonableness in light of the facts the trial court determines at hearing." *Marino*, at 725.

Our review is similarly premised upon the recognition that diversion agreements are entered into and supervised by the prosecutor, as distinct from plea agreements, which are under the direct supervisory control of the court. The principle of separation of powers requires from the appellate court, as well as from the trial court, a degree of deference to the prosecutor's reasons for termination. What that means in practice is well demonstrated in the present case by the way the trial court distinguished its own independent view that the termination was unreasonable from its legal conclusion that the prosecutor's decision to terminate was "not unreasonable".

### III

#### REVIEW OF TERMINATION DECISION

In the matter under review, substantial evidence supports the court's finding of violations. As to condition 9, it is undis-

puted that Kessler was several thousand dollars in arrears to his therapist. He had previously been in debt to the point of being suspended from treatment for 3 months in 1989. He was allowed to resume treatment upon paying down the debt, but it rose again notwithstanding Kessler's continued full employment because he decided to spend money on other items.

■ A prosecutor's decision to terminate for nonpayment of therapy bills will not be upheld as reasonable where the underlying problem is hardship and inability to pay. *United States v. Snead*, 822 F. Supp. 885, 888 (D. Conn. 1993). By contrast, Kessler's nonpayment was willful, resulting from his deliberate choice to make this financial obligation a low priority.

As to condition 8 of the agreement, Kessler failed to cooperate enthusiastically with his treatment regimen; he failed to keep complete journal entries of his sexual activity and thoughts as required; he deceived his therapist and program manager with regard to his ongoing contact with Theresa; and he engaged in the unpermitted activity of cross dressing and did not report it for some time to his therapist.

The treatment provider, O'Connell, testified that the cumulative total of Kessler's failures to follow the directives of the program were "significant", irrespective of Kessler's sometimes satisfactory level of cooperation.

As to condition 17, the record shows that both O'Connell and Donaldson knew of and tolerated Kessler's continued contact with his ex-wife Theresa (the child victim's mother) throughout the diversion period. The record further indicates that Theresa may have instigated the precipitating incident, where Kessler followed Theresa and drove by her house. O'Connell suspected she was "using" Kessler. The court found that Kessler's motive was to contact his ex-wife, not the child. Nevertheless the evidence established the violation because Kessler not only failed to report this contact, but also lied about it when confronted.

■ The determination as to whether termination is reasonable for these violations is analogous to the determi-

nation in a breach of contract case of whether a breach is material, thus warranting a remedy. It depends on the circumstances of each particular case. *Vacova Co. v. Farrell*, 62 Wn. App. 386, 403, 814 P.2d 255 (1991).

Because Kessler's violations were not criminal in nature, the trial court perceived them as collateral to the primary objective of diversion. We agree with the prosecutor, however, that the unreported following of Theresa was a material violation. In view of Kessler's prior contacts with Theresa, to which the treatment program had not objected, Kessler's material breach was not a violation of the no-contact condition (condition 8) but rather another violation of the cooperation condition (condition 17). It was essential to the treatment regimen that Kessler break the habit of being secretive and dishonest about his conduct. This particular deception was significant because he concealed contact that brought him physically near the residence of the child victim.

Of consequence, the trial court found that had Donaldson known of this contact, he would have terminated Kessler earlier. The prosecutor's act of terminating Kessler less than 2 weeks before the end of diversion is therefore not as harsh as it first appears.

Substantial evidence supports the trial court's finding of several violations of the agreement by Kessler. We hold that the State's decision to press charges rather than allowing him to conclude his participation in diversion was not unreasonable in light of the materiality and cumulative weight of the proved violations, even though the violations did not involve reoffense or pedophilic behavior.

## IV

### SPEEDY TRIAL

■■ The defendant has the burden to prove by a preponderance of the evidence that the State's conduct compelled him to choose between the right to have counsel proceed to trial adequately prepared and the right to a speedy trial. *State v. Greene*, 49 Wn. App. 49, 58, 742 P.2d 152 (1987). "The trial court's decision granting a continuance or exten-

sion is reviewed only for an abuse of discretion." *Greene*, at 55.

Kessler's speedy trial date was March 27, 1992. Two weeks before this date, the State filed its motion for reconsideration of the trial court's initial decision to dismiss charges based on the unreasonable termination of the diversion agreement. On March 26, the State's motion was argued and granted. On March 27, the State said it was prepared to go to trial. Kessler conceded that he was not. Over Kessler's objection, the court on its own motion, pursuant to CrR 3.3(h)(2), continued the trial date to April 17.

Kessler argues that he was denied his right to a speedy trial because the State did not schedule the reconsideration hearing until the eve of the expiration of the speedy trial date. Kessler seeks dismissal of the charges pursuant to CrR 3.3(i).

The record shows that the State acted promptly by moving for reconsideration within 4 days of the trial court's initial oral ruling, and consulted Kessler prior to setting March 26 as the mutually agreeable hearing date for its motion. Kessler also had indicated that, if the case proceeded to stipulated trial, it would take no more than one-half day based on the police record and his confession. Because the record provides no factual basis for Kessler's alleged lack of preparedness, he fails to show how the State's actions denied him his right to a speedy trial. In moving for a continuance on its own so as not to force Kessler to go to trial unprepared, the court acted well within its discretion.

Affirmed.

SCHOLFIELD and BAKER, JJ., concur.