FILED
COURT OF APPEALS
DIVISION II

2013 APR 23 PM 2: 02

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CITY OF LAKEWOOD, | No. 42918-7-II |
| Appellant, | |
| v. | |
| AARON W. ROBERTS, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, A.C.J. — The City of Lakewood (City) appeals the Lakewood Municipal Court's denial of its motion to revoke Aaron W. Roberts's pretrial diversion agreement. The City argues that the municipal court failed to apply the standards required under *State v. Marino*, 100 Wn.2d 719, 674 P.2d 171 (1984), and *State v. Kessler*, 75 Wn. App. 634, 879 P.2d 333 (1994). Because the municipal court's findings do not comply with *Marino* and *Kessler*, we reverse and remand for further proceedings.

## FACTS

In January 2008, the City charged Roberts with two counts of third degree malicious mischief,[1] one of which included a domestic violence allegation. On June 10, the City and

_____
[1] RCW 9A.48.090(1).

Roberts entered into a pretrial diversion agreement, titled as a Stipulated Order of Continuance with Conditions (SOC). The SOC provided that the City would dismiss the charges if Roberts complied with the SOC's conditions for 24 months. If Roberts failed to comply with the conditions, he agreed to be tried on stipulated facts. One of the SOC conditions required Roberts to "have no violations [of] criminal law during the period of the continuance." Transmittal of Record on Appeal to Superior Court (TRASC) at 24.

In March 2009, the City of Fife charged Roberts with third degree driving while license suspended; it then reduced the charge to a traffic infraction. In April 2010, the City of Steilacoom charged Roberts with third degree driving while license suspended; that case was resolved by bail forfeiture.

On June 10, 2010, two years after the SOC was entered, the City moved to revoke the SOC; the City alleged that Roberts had "[f]ail[ed] to [m]aintain [l]aw [a]biding [b]ehavior," based on these two third degree driving while license suspended charges.[2] TRASC at 26-27. At the hearing on this matter, Roberts argued that (1) the 2009 incident was an infraction and was therefore not a violation of the SOC; and (2) the 2010 incident was ultimately a bail forfeiture because the prosecutor had advised Roberts, who was not then represented by counsel, that if he paid the fine "he could have it go away that day," and he did not understand that this would then be considered a violation of the SOC. Electronic Record Transcript (ERT) at 2. Roberts's counsel also told the court about her contacts with Roberts since he entered into the SOC, noted

---

[2] The City also alleged that he was in arrears on his financial obligations; Roberts resolved this issue, and the City abandoned this revocation ground.

No. 42918-7-II

his many successes[3] since he agreed to the SOC, and asked the court to consider that none of the alleged violations related to the charged incidents. The City argued that even though Roberts may have disposed of the two charges with "alternative dispositions," "one a bail forfeiture one an amendment," he was still charged with those crimes and "the allegations [were] supported by the officer's sworn police reports which the City would posit on their face do support the allegation that the defendant did in fact breach the SOC." ERT at 5.

The municipal court denied the City's motion, ruling that:

> Well, I'll tell you what I am going to do . . . I[ ] frankly am persuaded by counsel's argument that she has a close professional contact with . . . Mr. Roberts. . . . I'm going to deny the motion to revoke . . . this [SOC] . . . counsel and the defendant should be aware that that's an unusual act for this Court because its [SOC] are routinely revoked whenever there is an arguable violation. I'm not going to do that. And the reason I'm not going to do that is because counsel represented that she has close enough contact with Mr. Roberts and that he's been a good enough client that he's reporting to her on a regular basis and . . . I'm going to continue to give him the benefit, the benefit of the [SOC].

ERT at 6. Then, because the 24-month SOC term had expired, the municipal court dismissed the malicious mischief charges.

The City appealed to the superior court, arguing that the municipal court's decision was contrary to *Marino*. Roberts responded that the municipal court's decision was correct because (1) the driving without a license violations were not related to the original charges; (2) he was driving without a license because financial difficulties prevented him from paying traffic fines; and (3) although the SOC form contained a condition requiring the defendant to not drive without a valid license and insurance, that condition was not among the conditions imposed.

---

[3] Counsel stated that Roberts had since completed a deferred prosecution, had done well in a drug/alcohol treatment program, and was earning his associates degree in landscape design.

3

Analogizing to *City of Aberdeen v. Regan*, 170 Wn.2d 103, 239 P.3d 1102 (2010), the superior court concluded that the municipal court had not abused its discretion in denying the City's motion to revoke the SOC and affirmed the municipal court's ruling.

We granted the City's motion for discretionary review.

## ANALYSIS

The City argues that the municipal and the superior court's decisions conflict with *State v. Marino* and *State v. Kessler*. We agree.

### I. DIVERSION AGREEMENTS AND STANDARD OF REVIEW

The State, acting through the prosecutor's office, enters into and supervises pretrial diversion agreements; such agreements are not under the direct supervisory control of the trial court. *Kessler*, 75 Wn. App. at 639. In reviewing a prosecutor's decision to revoke a diversion agreement, both the trial court and the appellate court owe "a degree of deference to the prosecutor's reasons for termination." *Kessler*, 75 Wn. App. at 639. When a prosecutor decides to revoke a diversion agreement, the trial court must hold a hearing to determine whether, by a preponderance of the evidence, the defendant violated the agreement. *Marino*, 100 Wn.2d at 725.

Once the trial court has determined that the defendant has breached the agreement, it reviews the reasonableness of the prosecutor's decision to revoke in light of the facts determined at the hearing. *Marino*, 100 Wn.2d at 725. In reviewing for reasonableness, the trial court must "ascertain that facts exist that support [the] prosecutor's termination decision." *Marino*, 100 Wn.2d at 726. "The determination as to whether termination is reasonable [based on the alleged violations] is analogous to the determination in a breach of contract case of whether a breach is

material thus warranting a remedy." *Kessler*, 75 Wn. App. at 640-41. The prosecutor's decision to revoke is not unreasonable merely because the trial court disagrees with that decision. *Kessler*, 75 Wn. App. at 639. The trial court must "clearly state the evidence upon which [it] relied" in making its reasonableness determination. *Marino*, 100 Wn.2d at 727.

We first review the trial court's findings that the defendant violated his diversion agreement for sufficiency of the evidence. *Kessler*, 75 Wn. App. at 638-39. We then engage in the same inquiry as the trial court, asking whether, as a matter of law, the prosecutor's decision to terminate the agreement is reasonable in light of the facts the trial court determined. *Kessler*, 75 Wn. App. at 639.

## II. VIOLATIONS

Here, the municipal court did not expressly find that Roberts violated the terms of the agreement; it merely suggested that he had "arguabl[y]" done so. ERT at 6. Thus, the municipal court's findings are insufficient under *Marino* and *Kessler*. Despite this failure, however, Roberts concedes that the trial court could have found that his two driving without a license charges established that he had violated the SOC based on the police reports the prosecutor provided. Br. of Appellant at 6. We agree. Although nothing in the record shows that Roberts was *convicted* of any violations of criminal law, case law establishes that a criminal conviction was not necessary. In *Regan*, our Supreme Court held:

> Because the plain language of "violations of law" means engaging in conduct that is prohibited by the law, and because the word "criminal" merely restricts what type of legal violation triggers the condition, we hold that the condition "no criminal violations of law" plainly restricted [the defendant] from engaging in conduct prohibited by criminal law.

170 Wn.2d at 112-13. Here, the facts clearly established by a preponderance of the evidence that Roberts committed third degree driving while license suspended. Accordingly, the key issue here is whether the municipal court properly determined that the prosecutor's revocation decision was unreasonable.

### III. REASONABLENESS

The municipal court did not expressly find that the prosecutor's revocation decision was unreasonable. The court's findings merely stated that it would not revoke the agreement because Roberts had been in regular contact with his counsel. Nothing in the record shows that the municipal court evaluated whether the two violations were material breaches of the contract as required under *Kessler* or that the court gave any deference to the prosecutor's revocation decision. The municipal court's ruling appears to reflect only that the court's decision would have been different—but without more detailed findings this court cannot fully evaluate the municipal court's reasoning. Furthermore, the superior court's ruling does not address these defects and appears to defer to the municipal court's decision rather than give any degree of deference to the prosecutor's decision.[4] *Kessler*, 75 Wn. App. at 639. Accordingly, we reverse and remand to the municipal court with instructions that the court determine whether the

---

[4] The superior court concluded that the municipal court had not "abused [its] discretion" in denying the City's motion to revoke the SOC. Clerk's Papers at 42. As noted above, in this context, the appellate court first reviews the trial court's findings that the defendant violated his diversion agreement for sufficiency of the evidence and then engages in the same inquiry as the trial court, asking whether, as a matter of law, the prosecutor's decision to terminate the agreement is reasonable in light of the facts the trial court determined. *Kessler*, 75 Wn. App. at 638-39. Accordingly, the superior court applied the wrong standard of review.

prosecutor's decision to terminate the agreement given these two violations was reasonable as required under *Kessler*.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.

We concur:

Quinn-Brintnall, J.

Bjorgen, J.