IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80248-8-I |
| | ) | |
| Respondent, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT GLEN REED, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. – Robert Reed appeals a decision terminating his participation in a drug court program after he admitted forging documents in violation of his participation agreement. Reed's dismissal from the program resulted in a conviction for possession of a stolen vehicle. Reed contends that the trial court erred in applying an abuse of discretion standard when evaluating the drug court's termination decision. Although we agree the abuse of discretion standard was not applicable under the terms of Reed's agreement with the State, we nevertheless affirm the termination decision as reasonable.

## FACTS

In May 2018, Robert Reed was charged with possession of a stolen vehicle. In November of that year, the trial court granted the State's motion to transfer the

Citations and pin cites are based on the Westlaw online version of the cited material.

matter to the Snohomish County Drug Court Program to assess Reed's eligibility.[1]

On January 16, 2019, Reed signed an agreement to enter the Snohomish County Adult Drug Treatment Court program (ADTC). Under the terms of this ADTC agreement, Reed agreed to attend all treatment and court sessions as ordered by the drug court. He also agreed to follow the treatment plan developed by the ADTC treatment provider and to participate in all other programs, including sober support meetings, to which he was referred by the court or the treatment team. A section of the agreement, entitled "Participant's Responsibilities and Agreements," stated that "any failure . . . including, but not limited to: positive, unable to produce, missed or dilute urinalysis tests, missed treatment, missed court appearances, any failure to abide by the terms of this agreement, or commission of a new crime, may result in . . . termination from the ADTC." The agreement further provided that "Dishonesty (forgery, lying, omission of information) may result in termination from ADTC." Under the section entitled "Sanctions," Reed agreed to the following:

> I understand that if I fail to follow any of the terms of this agreement, the ADTC Judge may impose sanctions on me, which can include, but are not limited to:
>
> -Termination from the program (which means being convicted and sentenced to the term prescribed by law for the original felony charge)

In exchange for his participation in the ADTC, Reed waived his right to a speedy trial and to a jury trial on the underlying charge. In the event Reed was terminated from the ADTC, he stipulated to the admissibility of police reports and

---

[1] Pleadings from 2018 refer to this program as the CHART Treatment Court, an acronym for "Choosing Healthy Alternatives– Recovery and Treatment." The trial court, however, later referred to the program as the Adult Drug Treatment Court or ADTC.

to the affidavit of probable cause to establish his guilt. He understood that the judge would read these documents and, based solely on that evidence, decide if he is guilty of the charged crime. Reed acknowledged that it was "very likely" the judge would find him guilty and would likely sentence him to 57 months' confinement, the State's recommended sentence in the event of termination.

The ADTC agreement outlined a termination and review process:

> In addition, I understand the Team may, at any time during the program, decide to terminate me from ADTC Court for non-compliance or my violation of any of these agreements. The termination decision will ultimately be made by the Judge, taking into consideration the entire team's recommendations.
>
> If I disagree with that decision, I may request a full adversarial hearing which would be scheduled before a different judge at which time the prosecutor would be required to prove the program violations or circumstances that warrant termination by a preponderance of the evidence and I would have the right to be represented by counsel at no cost if I could not afford to hire an attorney.

In a section entitled "Procedure on Defendant's Breach or Failure to Comply with the ADTC Program," the agreement provided:

> The prosecutor reserves the right to prosecute the Defendant upon any termination from ADTC in accordance with the procedures in State v. Marino, 100 Wn.2d 719, 647 P.2d 171 (1984) and State v. Kessler, 75 Wn. App. 634, 879 P.2d 333 (1994).
>
> I understand that I will have the right to a hearing by a drug court judge who was not party to the decision to terminate me, as to whether I did the act which prompted the team to decide to terminate me, but whether termination is the appropriate sanction lies in the sole discretion of the team, and cannot be reviewed at the due process hearing.

The agreement defined the "ADTC team" as "the prosecutor, Judge, ADTC coordinator, or ADTC treatment provider" and noted that any team member could request that Reed be removed from the program.

Reed asked the trial court to approve this agreement, to waive his presence at informal staffing discussions before on-the-record status hearings, and to order that these informal staffing discussions not occur in open court. The court entered a set of findings of fact and conclusions of law, pursuant to State v. Bone-Club, 128 Wn.2d 254, 260, 906 P.2d 325 (1995) (the Bone-Club Order), concluding that any staffing decisions concerning Reed's progress in treatment and his compliance with program requirements would not occur in open court due to Reed's request and his compelling privacy interest. Scheduled status hearings involving Reed were ordered to occur in open court and on the record, giving Reed the right to be heard and participate. Any decisions related to sanctions would be announced in the open court hearings. The court further concluded:

> In the event of a recommendation to terminate the defendant from ongoing participation in ADTC, he/she shall be given the opportunity for a fully contested adversarial hearing before an independent judge, at which time the defendant will be present and represented by counsel and afforded the opportunity to be heard, and the prosecutor will bear the ultimate burden of proof by a preponderance of the evidence of sufficient violations or program noncompliance to warrant termination.

Reed missed a scheduled urinalysis test on January 27, 2019. At a February 1, 2019 hearing, the trial court found Reed in violation of the ADTC agreement and sanctioned him to 8 hours of community service. During a subsequent February 8, 2019, hearing, the court found Reed to be in further violation of the drug program rules because he had failed to submit sober support

meeting slips,[2] missed a treatment appointment, and failed to comply with the sanction imposed on February 1. As a result, the court imposed a sanction of 16 hours of community service, a "graduated" sanction consisting of the original sanction and an additional sanction for noncompliance with the original sanction, and it required that he attend daily self-help meetings.

During the period between February 8 and February 22, 2019, Reed was excused from a meeting due to illness, and the treatment agencies were closed for several days due to inclement weather. Reed appeared for a February 22 hearing but had not completed any of the community service hours. He had, however, turned in a sober support meeting slip to his treatment team, identifying dates on which he purportedly attended these meetings.

Before the hearing, Reed's treatment team examined the sober support meeting slip, noticing that the dates on the slip were future dates that had not yet occurred. His case manager, Laura Whitaker, noted that "it was very clear that the meetings were not accurate, that they were forged, because the dates had not yet occurred." During the February 22 hearing, Reed admitted to forging the slip. Reed was then taken into custody until his treatment team reached a decision. Reed's treatment team made the decision to terminate him from the program on March 8, 2019, and Judge Marybeth Dingledy signed an order terminating him from the program.

---

[2] Under the ADTC Participant Manual, Reed was required to attend and participate in three sober support meetings each week. He was required to provide his treatment provider with slips verifying his attendance at the meetings each week. Per the manual, failure to turn in a verification slip may result in a sanction.

On March 15, 2019, Reed sought review of the March 8 termination decision. Reed's counsel conceded that Reed had forged the sober support meeting slip. But Reed contended the violation was not sufficient to warrant termination from the ADTC. Reed maintained that the State had to prove, by a preponderance of evidence, that he had not only breached the ADTC agreement but that the breach was serious enough under the circumstances to make termination appropriate.

The State argued that once it proved a contractual violation by a preponderance of the evidence, the judge only needed to review the termination decision for abuse of discretion, citing to this court's unpublished decision in State v. Knight, No. 75648-6-I, noted at 196 Wn. App. 1060 (2016).

Reed argued in the alternative that even if the decision was reviewed under an abuse of discretion standard, the court's decision to terminate Reed from drug court was manifestly unreasonable because Reed had immediately admitted to forging the meeting slip, and the February 2019 weather made it impossible for Reed, who was homeless, to attend the required meetings and complete his community service hours.

After a contested evidentiary hearing on May 9, 2019, the reviewing court ruled:

> The team, over the course of three weeks, had engaged in discussions about what to do with the forgery, and, ultimately, Judge Dingledy decided to terminate Mr. Reed. My job, as a reviewing court, is, frankly, fairly narrow. It does not require me to substitute my judgment for that of Judge Dingledy or the team. My job is to determine whether the facts are sufficient to support the termination and whether the decision is an abuse of discretion.

The termination below is supported by substantial evidence. I think the standard is by a preponderance. The -- it's -- it's a sanction that is contemplated in the contract and contemplated in best practice, contemplated by the sanctions and incentives grid that has been adopted by adult drug court.

. . .

I think if you balance that on the whole with Mr. Reed's history that is known -- or was known to drug court -- to the drug court team, . . . . I can't find, frankly, that the decision by Judge Dingledy to be an abuse of discretion.

I think, in weighing of all the pros and cons, it supports the termination of Mr. Reed. And so I will affirm the termination of -- decision by the adult drug court judge to terminate Mr. Reed.

In its subsequent written findings of fact and conclusions of law, the reviewing court found that Reed signed an agreement acknowledging that he could be terminated for dishonesty, using forgery as an example of dishonesty, that he submitted a weekly sober support meeting slip to his ADTC team, and that the slip included dates in the future that Reed clearly could not have attended. Moreover, the reviewing court found that although Reed did not at first admit that he forged his documentation, he later acknowledged that the slip was forged. The court further found that the team spent three weeks discussing how to respond to Reed's forgery. And it found that the team ultimately decided to terminate Reed from the program after a consideration of his history, the "NADCP Best Practices,[3] and the program's sanctions and incentive grids."[4] The court then "weighed Mr. Reed's short time in the program and the fact that he was not fully stable against

---

[3] National Association of Drug Court Professionals, Adult Drug Court Best Practice Standards, https://www.nadcp.org/standards/adult-drug-court-best-practice-standards/

[4] The ADTC maintains a published "Adult Drug Court Incentive Grid" and an "Adult Drug Court Sanction Grid" that identify a range of options for various types of program violations.

Mr. Reed's history, including DOSA, Thinking for a Change, Inpatient Treatment, Outpatient Treatment, and his level of sobriety at the time." It concluded "that the termination decision is supported by the evidence and the Court cannot find that [the drug court judge's] decision was an abuse of discretion."

The court subsequently found Reed guilty of possession of a stolen vehicle and sentenced him to 57 months' confinement. Reed appeals his termination from the ADTC.

### ANALYSIS

Reed argues that the reviewing court failed to apply the correct burden of proof in evaluating the evidence leading to his termination from drug court. He contends that under the Bone-Club Order, the State had to prove, by a preponderance of evidence, that Reed violated the ADTC agreement and that the violation warranted termination from the program. He maintains that the abuse of discretion standard was inappropriate here.

We agree with Reed that neither his ADTC agreement nor the Bone-Club Order made a termination decision subject to an abuse of discretion standard. We also agree that the trial court erred in reviewing the termination through this lens. But under well-established case law, whether Reed's admitted violation warranted termination is a question of law that we review de novo. See State v. Kessler, 75 Wn. App. 634, 639, 879 P.2d 333 (1994). In light of the undisputed facts, we conclude that the decision to terminate Reed was reasonable as a matter of law.

Reed's ADTC agreement contained two provisions relating to his possible termination from the program. The first provided:

> I understand the Team may, at any time during the program, decide to terminate me from ADTC Court for non-compliance or my violation of any of these agreements. The termination decision will ultimately be made by the Judge, taking into consideration the entire [treatment] team's recommendations.
>
> If I disagree with that decision, I may request a full adversarial hearing which would be scheduled before a different judge at which time the prosecutor would be required to prove the program violations or circumstances that warrant termination by a preponderance of the evidence.

The second provision, under the heading of "Procedure on Defendant's Breach or Failure to Comply with the ADTC Program," provided:

> The prosecutor reserves the right to prosecute the Defendant upon any termination from ADTC in accordance with the procedures in State v. Marino, 100 Wn.2d 719, 647 P.2d 171 (1984) and State v. Kessler, 75 Wn. App. 634, 879 P.2d 333 (1994).
>
> I understand that I will have the right to a hearing by a drug court judge who was not a party to the decision to terminate me, as to whether I did the act which prompted the team to decide to terminate me, but whether termination is the appropriate sanction lies in the sole discretion of the team, and cannot be reviewed at the due process hearing.

The referenced "procedures" in Marino and Kessler are the due process requirements our Supreme Court and this court have imposed on decisions to terminate participation in pre-prosecution diversion programs. In Marino, the Supreme Court held that a defendant has a due process right to an independent determination that the deferred prosecution agreement was violated, with the State bearing the burden of proving the violation by a preponderance of evidence. 100 Wn.2d 719, 725, 647 P.2d 171 (1984). Once that factual determination is made, the court reviews a termination decision for its reasonableness in light of the facts found by the court at the hearing. Id.

- 9 -

In Kessler, this court held that this reasonableness determination is a legal conclusion, or a mixed question of fact and law, to be reviewed on appeal de novo. 75 Wn. App. at 639. The question "is analogous to the determination in a breach of contract case of whether a breach is material thus warranting a remedy." 75 Wn. App. at 640-41. It affirmed Kessler's termination from a pretrial sexual deviancy diversion program for failing to report contact with his crime victim and lying about it when confronted. Id. at 640. Applying a de novo standard of review, the court deemed this conduct to be a material breach because "it was essential to the treatment regimen that Kessler break the habit of being secretive and dishonest about his conduct." Id. at 641.

The provision in Reed's agreement making a termination decision non-reviewable in a due process hearing is in direct conflict with the protections provided by Marino and Kessler—cases explicitly referenced in Reed's agreement. The test under Marino is whether the decision is reasonable, and that decision is explicitly reviewable under a de novo standard under Kessler. Although one can waive procedural due process protections, Reed did not do so here, given the State's express intent to follow the procedures of Marino and Kessler. We therefore deem invalid the provision in Reed's agreement making the termination decision non-reviewable. We further conclude that the applicable standards are those set out in Marino and Kessler. Those are the procedures to which these parties agreed. And neither case sets out an abuse of discretion standard for reviewing a sanction imposed by a drug court. The reviewing court thus did err in applying that standard.

Both Reed's agreement and the Bone-Club Order placed the burden on the State to show, by a preponderance of the evidence, that Reed committed violations that warranted termination.[5] Whether Reed committed a violation is, as both parties agree, a question of fact. The reviewing court found that Reed had expressed a desire to improve his honesty and was told that one of the most important rules in drug court was to be honest. It also found that in February 2019, Reed submitted a slip for his weekly sober support meetings, which included dates in the future that he clearly could not have attended. Reed did not at first admit that he forged the documentation but later acknowledged the slip was forged. Reed has not assigned error to any of the reviewing court's findings of fact, and they are thus deemed true on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

The record supports a finding Reed's act was a violation of the ADTC agreement and program requirements. The agreement required Reed to be honest "regarding all aspects of my life while in ADTC." It explicitly identified dishonesty and forgery as bases for termination from the program. The ADTC Participant Manual similarly provided that the failure to attend sober support meetings "and/or forging your sober support slip may result in a sanction up to and including termination from ADTC." There is no dispute that the State met its burden of proof that a violation occurred.

---

[5] Reed argues that there is a conflict between the procedures or burden of proof provisions of the agreement and those in the Bone-Club Order. We reject this argument. The language in both is almost identical in wording and we see no conflict between the two documents.

Reed argues that the State failed to prove that his admitted forgery was serious enough to warrant termination. But under Kessler, whether a termination decision is reasonable—or, stated another way, whether Reed's violation was a material breach of his participation agreement—is a question of law, not a question of fact. Thus, even if the reviewing court incorrectly applied an abuse of discretion standard in evaluating the termination decision, we would still review that decision de novo.[6]

After reviewing the evidence presented below, we conclude that the decision to terminate Reed from the ADTC was reasonable because Reed's dishonesty was a material violation of his participation agreement. Whitaker, Reed's case manager and the ADTC program coordinator, testified that she screened and monitored Reed's case throughout his time in the program. After Reed was deemed eligible for the program, Whitaker met with Reed to discuss the ADTC agreement. Reed admitted that he reviewed the agreement before entering the program and understood its terms. Reed confirmed he understood he could be terminated for violating the agreement. The agreement explicitly made dishonesty, mentioning forgery, as a basis for termination from the program.

---

[6] We recognize that in State v. Knight, this court held the decision to terminate someone from drug court is left to the trial court's discretion. 196 Wn. App. 1060 at *1. But Knight is an unpublished case and has no precedential value. GR 14.1(a). Moreover, the decision itself does not discuss the terms of the drug court contract Knight signed. We do not know if Knight's contract incorporated the procedures set out in Kessler, as Reed's agreement did. Additionally, the parties in Knight agreed that the trial court had the discretion to determine whether to terminate a participant from the program and that the standard of review was abuse of discretion. 196 Wn. App. at *1. No similar agreement exists here.

Reed also received a copy of the ADTC Participant Manual. This handbook, like the agreement, clearly stated that failing to attend sober support meetings or forging meeting slips may result in termination from ADTC.

And on February 8, 2019, Reed submitted a sober support meeting slip that indicated he had attended daily meetings from February 23 through February 29, all dates in the future. The team confronted Reed regarding the dates on the slip in open court at a status hearing. The team felt that it was important to try to elicit an honest response because "honesty is an integral part of [the] program." When the drug court judge asked Reed if he had anything to share about the meeting slip, he was initially dishonest with the court. When confronted with the dates, however, he admitted that he had not in fact attended some of the meetings listed on his slip. After some prompting by the judge, he told the court he had forged the dates because he was scared of going to jail.

Leesha Shafford, a certified chemical dependency counselor with Catholic Community Services, testified that when she first met with Reed to discuss starting intensive outpatient treatment, she reiterated her expectations that he would "show up and be honest." These two expectations are, according to Shafford, the cornerstones of the program because the absence of participation and honesty further perpetuates addiction and is incompatible with the treatment program. After Reed submitted the forged meeting slip, the ADTC team discussed what type of sanction to impose and how to deal with his dishonesty. According to Shafford and Katherine Shiner, a drug court coordinator, the team decided that Reed's

dishonesty led them to conclude termination was the best option, because honesty was the "foundation of recovery."

We conclude that terminating Reed for being dishonest with his treatment team and the drug court was reasonable. Kessler is instructive in determining the materiality of Reed's forgery and lack of candor with the court. In that case, this court held that Kessler's dishonesty regarding his contacts with his crime victim was a material violation of his diversion agreement because "it was essential to his treatment regimen that Kessler break the habit of being secretive and dishonest about his conduct." 75 Wn. App. at 641. As in Kessler, Reed's drug court team described the importance of honesty with Reed when he entered the program, the witnesses explained to the reviewing court why honesty was so foundational to the treatment regimen, and the program documentation put Reed on notice that forging sober support meeting slips was a terminable offense. Under these circumstances, the reviewing court's findings of fact support the legal conclusion that terminating Reed from the drug court program was reasonable.

Affirmed.

_Andrus, A.C.J._

WE CONCUR:

- 14 -