73 P.3d 1016 (2003)
117 Wash.App. 773
STATE of Washington, Respondent,
v.
Jose M. OLIVA, Appellant.
No. 21056-1-III.
Court of Appeals of Washington, Division 3, Panel Four.
July 29, 2003.
Janet G. Gemberling, Attorney at Law, Spokane, WA, for Appellant.
John D. Knodell, III, Edward A. Owens, Prosecuting Attorney's Office, Ephrata, WA, for Respondent.
SWEENEY, J.
A plea bargain is a contract. And we interpret it as such. As part of a plea agreement, the State agreed to recommend the special sex offender sentencing alternative (SSOSA) if Jose Oliva was amenable. At a plea hearing, the State told the judge that it *1017 would agree to SSOSA if Mr. Oliva was amenable. The court ordered a presentence investigation report (PSI) and an evaluation at Eastern State Hospital, requested by Mr. Oliva. The PSI concluded that Mr. Oliva's financial situation and multiple substance abuse problems made him a poor candidate for SSOSA. The doctors at Eastern State concluded that Mr. Oliva presented a substantial danger to himself and others and needed court-ordered control. Based on all of this, the State declined to recommend SSOSA at the subsequent sentencing hearing. The court read the reports and agreed that SSOSA would not be appropriate for Mr. Oliva. Mr. Oliva, through counsel, acknowledged that the court was within its discretion to do this. But on appeal he contends he was entitled to further evaluation to determine his amenability to SSOSA, and that the State breached its plea agreement by opposing a SSOSA evaluation. The trial judge's finding that the State's promise to Mr. Oliva was contingent on some showing of amenability and that he was not amenable is amply supported by the record. And so we affirm the judge's decision to deny SSOSA.

FACTS
Nineteen-year-old Jose Oliva sexually molested a four-year-old child. The State charged him with first degree child molestation. Mr. Oliva pleaded guilty after the State agreed to recommend SSOSA if Mr. Oliva was qualified. The trial court accepted and approved the plea agreement. The State said it would support SSOSA if Mr. Oliva was found amenable. The court warned Mr. Oliva that it was not required to follow the State's recommendation. The court ordered the Department of Corrections (DOC) to prepare a PSI.
After Mr. Oliva tried to hurt himself while in jail, the court granted his request for an evaluation at Eastern State. Health care workers there concluded that he was competent to stand trial and assist in his own defense, and found no mental defect or disease. But the doctors also found that Mr. Oliva "present[s] a substantial danger to himself and to others and is in need of control by the Court or other persons or institutions." Clerk's Papers at 38.
DOC Risk Management Specialist Michael Tilton and Community Corrections Officer Carl Taylor evaluated Mr. Oliva for consideration of SSOSA as part of the presentence investigation. Mr. Tilton concluded that Mr. Oliva was a poor candidate for SSOSA for a number of reasons:
(1) his extensive criminal record;
(2) lack of financial support from family, friends, or employment;
(3) a history of ongoing substance abuse; and
(4) lack of honesty about his current offense.
The PSI also concluded that institution-based treatment options, including substance abuse as well as sexual offender treatment, would be most beneficial to Mr. Oliva. Moreover, Mr. Oliva's lawyer was himself ambivalent, at best, about the wisdom of Mr. Oliva's submitting to a SSOSA evaluation, based on suggestions in the preliminary reports that he might confess to additional sex offenses against minors, which would not only preclude SSOSA treatment but would expose him to additional charges. Report of Proceedings (Apr. 8, 2002) (RP) at 6.
At the sentencing hearing, the State declined to recommend SSOSA based on the presentence evaluation. In response, Mr. Oliva's trial counsel assured the court that the prosecutor was not violating their plea agreement:
I don't think [the prosecutor] is violating our agreement. I think he's properly arguing what I'd argue if I was in his shoes. The PSI, without a SSOSA evaluation, thought my client was a very poor candidate. Whether a SSOSA evaluation will change their mind, I don't know.
RP at 5.
Defense counsel continued:
I don't begrudge [the prosecutor's] position one inch. He has the PSI. It's not rosy, I'm not going to disagree with that.
RP at 7. Mr. Oliva's counsel nonetheless went on to suggest that the court exercise its discretion and order a SSOSA evaluation to *1018 remove any doubts about Mr. Oliva's amenability to treatment.
The court disagreed and denied the request for a SSOSA evaluation because of Mr. Oliva's apparent lack of amenability as outlined in the presentence investigation:
THE COURT: I'll be honest with everyone, that's where I'm leaning. When I read the PSI I see a lot of crimes that aren'twith a lot of victims and they're not all necessarily sex related. We don't have someonein fact I think he was evaluated with an MMPI[1] with the antisocial personality disorder and you don't have sexual deviancy of any kind. I don't see this case spinning into that at all, any threshold being met in that way. Is that your position Mr. Owens [the prosecutor]?
MR. OWENS: It is.
. . . .
THE COURT: All right. Well Mr. Schiffner [defense counsel] has argued on behalf of his client here today that the court should order a SSOSA evaluation and the county should pay the funds. This court, in reading the PSI before today's hearing, finds that there's no basis other than the charged crime for the court to find that a SSOSA evaluation would be helpful. And if that was the case, if it was just sufficient to say the charged crime is sufficient, every one of these cases with this, with a sexual offense, every one would be evaluated for a SSOSA evaluation. I'm going to deny the request to order the SSOSA evaluation, given the information that I have in the PSI.
RP at 7-8. The court concluded that nothing in the presentence report indicated the possibility that an evaluator would find Mr. Oliva amenable to treatment, and that, therefore, evaluation was a waste of time and money. The prosecutor recommended the presentence report suggestion of a standard range sentence of 66 months. And the court imposed that sentence.

DISCUSSION
Plea agreements must be read in the context in which they are made. State v. Koivu, 68 Wash.App. 869, 872, 847 P.2d 13 (1993).
Like the prosecutor in Koivu, the prosecutor here agreed to recommend the sexual offender alternative only if the defendant was amenable. As it turned out, he was not. And, therefore, the obligation of the prosecutor to recommend SSOSA ended with the failure of the condition precedentamenability.
Plea agreements are regarded and interpreted as contracts. State v. Sledge, 133 Wash.2d 828, 838, 947 P.2d 1199 (1997). We therefore apply contract principles when construing them. State v. Wheeler, 95 Wash.2d 799, 803, 631 P.2d 376 (1981). And the object of contract interpretation is to ascertain and give effect to the intent of the parties. In re Marriage of Litowitz, 146 Wash.2d 514, 528, 48 P.3d 261, 53 P.3d 516 (2002). To do so we look at the language of the agreement. But we also view "`the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.'" Litowitz, 146 Wash.2d at 528, 48 P.3d 261 (quoting Scott Galvanizing, Inc. v. N.W. EnviroServices, Inc., 120 Wash.2d 573, 580-81, 844 P.2d 428 (1993)).
Plea agreements, by their nature, tend to be less formal and rely more on implicit understandings of the state and criminal defendants and their attorneys than do contracts in a commercial context. It may be for that reason that the terms of an agreement are generally defined by what the defendant understood them to be when he or she entered into the plea agreement. State v. Cosner, 85 Wash.2d 45, 51-52, 530 P.2d 317 (1975). Here, there was no misapprehension expressed by Mr. Oliva or his counsel as to the specifics of this agreement.
Mr. Oliva meets the threshold requirements for SSOSA eligibility under RCW 9.94A.670(2). As the judge observed, however, the statute does not contemplate that *1019 every defendant who meets the basic statutory eligibility criteria must be evaluated for SSOSA. Whether or not to order an evaluation for SSOSA is ultimately a matter of the trial court's discretion. State v. Young, 125 Wash.2d 688, 697, 888 P.2d 142 (1995).
The question before the trial court was whether Mr. Oliva was "amenable." That is, given his background, history, social and economic circumstances, and psychological condition, could both he and the community benefit from community-based treatment under SSOSA. The question before this court is whether the trial court's decision is supported by the record. State v. Frazier, 84 Wash.App. 752, 754, 930 P.2d 345 (1997). This record amply supports the court's determination that SSOSA was inappropriate for Mr. Oliva, regardless of what an evaluation might have found.
Again, no one expressed any concern that the plea agreement was being violated at sentencing. Mr. Oliva's attorney did suggest that retention of an expert to evaluate Mr. Oliva's amenability to treatment would be a small price to remove any doubts about his amenability. But again, this is a decision vested in the sound discretion of the trial court. The court clearly had the agreement between these parties before it. The parties agreed that the decision was based upon the presentence investigation and the Eastern State report that Mr. Oliva was not amenable.
We therefore affirm the decision denying the SSOSA sentence.
I CONCUR: KATO, A.C.J.
SCHULTHEIS, J., (dissenting).
I agree with the majority that the trial court has broad discretion to order an evaluation at public expense for amenability under the special sex offender sentencing alternative (SSOSA). RCW 9.94A.670; State v. Montgomery, 105 Wash.App. 442, 444, 17 P.3d 1237, 22 P.3d 279 (2001). However, because the issue in this case is the State's violation of a plea agreement, I respectfully dissent.
In return for Jose Oliva's agreement to plead guilty to one count of child molestation, the State agreed to recommend SSOSA if Mr. Oliva was amenable to treatment. The question of amenability to treatment is necessarily determined in an evaluation by a certified sex offender treatment provider. RCW 18.155.030(2)(a). By opposing an evaluation by a certified sex offender treatment providerthe only statutorily recognized means of determining amenability to treatmentthe State circumvented the terms of the plea agreement. State v. Sledge, 133 Wash.2d 828, 840-41, 947 P.2d 1199 (1997).
That the trial court may not have ordered an evaluation no matter what the State recommended is of no moment. The question is whether the State violated its promise to recommend SSOSA, a promise predicated on a determination of amenability to treatment. Because the State hindered the fulfillment of the terms of the agreement by opposing a SSOSA evaluation, I conclude that it violated the plea bargain. Accordingly, I would reverse.
NOTES
[1] Minnesota Multiphasic Personality Inventory.