188 P.3d 522 (2008)
STATE of Washington, Respondent,
v.
Debra Ann ASHUE, Appellant.
No. 25970-6-III.
Court of Appeals of Washington, Division 3.
March 25, 2008.
Publication Ordered July 22, 2008.
*523 Dennis W. Morgan, Attorney at Law, Ritzville, WA, for Appellant.
Kenneth L. Ramm Jr., Yakima, WA, for Respondent.
KULIK, J.
¶ 1 Debra Ann Ashue appeals her conviction for residential burglary. After she was arraigned, Ms. Ashue entered into a pretrial diversion agreement with the State. On appeal, she contends: (1) the diverson program was unauthorized by the Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW; (2) the waiver of constitutional rights was not knowingly, intelligently, and voluntarily made; and (3) she received ineffective assistance *524 of counsel. A statutory diversion was not available to Ms. Ashue because she committed a felony. We hold that the nonstatutory diversion program did not violate the SRA, that Ms. Ashue's waiver was valid, and that she did not establish ineffective assistance of counsel. We affirm.

FACTS
¶ 2 On February 8, 2006, Debra Ann Ashue was charged with residential burglary, a class B felony. Ms. Ashue was arraigned the same day.
¶ 3 A pretrial hearing was held on April 28, 2006. At the hearing, Ms. Ashue entered into a diversion agreement with the State.[1] Under the terms of the agreement, the prosecutor agreed to dismiss the charges pending against Ms. Ashue upon her successful completion of the Yakima County "Friendship" Diversion Program. Clerk's Papers (CP) at 49. In exchange for her participation, Ms. Ashue waived certain constitutional rights, including her right to a speedy trial, the right to contest the validity of her arrest and any search and seizure, the right to a hearing to determine the voluntariness and the admissibility of statements she made, and the right to a jury trial. Ms. Ashue also stipulated to the admissibility of the police reports. By signing the agreement, she acknowledged that if she was terminated from the diversion program, a judge would decide her guilt at a stipulated bench trial, based solely on the police reports.
¶ 4 Ultimately, Ms. Ashue failed to comply with the terms and conditions of the diversion program. A bench warrant was issued for her arrest. A stipulated bench trial was scheduled for August 21, 2006. Prior to trial, the prosecutor allowed the defense to re-enter Ms. Ashue in the diversion program. An order of continuance was entered for the bench trial. A second bench warrant was issued when Ms. Ashue failed to appear for a hearing on September 26, 2006.
¶ 5 Ms. Ashue was apprehended. She filed a motion to rescind the diversion agreement. In support of the motion, Ms. Ashue alleged she received ineffective assistance of counsel because defense counsel did not take the case to trial as she requested, forced her to agree to a continuance as a result of his scheduling conflict, did not follow through on his promises, and neglected to return her telephone calls. Ms. Ashue further alleged that she was not provided with an opportunity to discuss the requirements of the diversion program or the consequences of signing the agreement.
¶ 6 Ms. Ashue maintains that she was coerced into signing the agreement. When the agreement was presented to her, she had already been in jail for a significant period of time, and defense counsel had done nothing to prepare for trial. As a result, she felt that she had no choice but to sign the agreement.
¶ 7 Ms. Ashue's motion to rescind was denied. The trial court entered an order finding that Ms. Ashue knowingly, intelligently, and voluntarily agreed to, and entered into, the stipulation and waiver agreement. That same day, at a stipulated bench trial, the court convicted Ms. Ashue of residential burglary. A judgment and sentence was entered in which the court imposed a sentence of 183 days. This appeal followed.

ANALYSIS
¶ 8 Ms. Ashue contends that the diversion procedures used by the prosecuting attorney do not comply with "pre-prosecution diversion" requirements of the SRA. Appellant's Br. at 1. She asserts that the diversion program was a felony deferred prosecution program prohibited by the SRA. Resolution of this issue requires this court to distinguish between deferred prosecution programs (also called post-charging diversion), plea agreements, and pretrial diversion agreements.
¶ 9 Deferred Prosecution Programs. Deferred prosecution programs are governed by statute. Chapter 10.05 RCW. A deferred prosecution is a statutorily-created "sentencing alternative of preconviction probation, to be added to the traditional choices of imprisonment, *525 fine, and postconviction probation." State ex rel. Schillberg v. Cascade Dist. Court, 94 Wash.2d 772, 779, 621 P.2d 115 (1980).
¶ 10 Pursuant to RCW 10.05.010, a person charged with a misdemeanor or gross misdemeanor in a court of limited jurisdiction may petition the court to be considered for a deferred prosecution program. See State v. Hahn, 83 Wash.App. 825, 827-28, 924 P.2d 392 (1996). In a deferred prosecution program, the defendant's referral for treatment results in the postponement of trial and the eventual removal of records relating to the charges. State v. Glasser, 37 Wash.App. 131, 132, 678 P.2d 827 (1984) (citing chapter 10.05 RCW).
¶ 11 Significantly, the Washington legislature no longer authorizes deferred prosecutions in adult felony cases. In 1981, the legislature amended former RCW 9.95A.010 (1973), the felony deferred prosecution statute, making it inapplicable to any felony offense committed on or after July 1, 1984, the effective date of the Sentencing Reform Act. LAWS OF 1981, ch. 137, § 33. Ultimately, the former statute was repealed in 1985. LAWS OF 1985, ch. 52, § 1.
¶ 12 Here, Ms. Ashue contends that she entered into an unauthorized deferred prosecution program, as opposed to a preprosecution diversion program, because she was arraigned prior to signing the agreement. Ms. Ashue's contention that the diversion program was a postarraignment deferred prosecution program, unauthorized by the SRA, is without merit. The diversion agreement at issue was not entered into pursuant to the deferred prosecution statute, chapter 10.05 RCW. While the two programs appear similar, multiple factors distinguish deferred prosecution from pretrial diversion. Most importantly, under Washington law, deferred prosecution is limited to misdemeanors in district court. RCW 10.05.010. Further, Ms. Ashue did not file a petition with the court and her entry into the diversion program did not meet other statutory requirements for deferred prosecution. See RCW 10.05.050 (the treatment facility must provide the court with a written report and treatment plan); RCW 10.05.060 (trial court examines the treatment plan and approves or rejects the deferred prosecution petition).
¶ 13 Plea Agreements. In opposing Ms. Ashue's contention, the State argues that the parties properly entered into a pretrial diversion program as part of a valid plea agreement.
¶ 14 Prosecutors have broad discretion to charge a crime or enter into a plea bargain. State v. Michielli, 132 Wash.2d 229, 245, 937 P.2d 587 (1997). RCW 9.94A.421[2] specifically provides the prosecutor with the authority to amend charges against a defendant, to move for dismissal of the charges, and to recommend a particular sentence as part of a plea agreement. "Agreements to forgo seeking an exceptional sentence, to decline prosecuting all offenses, to pay restitution on uncharged crimes, and to waive the right to appeal are all permissible components of valid plea agreements." State v. Lee, 132 Wash.2d 498, 506, 939 P.2d 1223 (1997). A plea agreement is considered a binding contract when accepted by the trial court. State v. Sledge, 133 Wash.2d 828, 838-39, 947 P.2d 1199 (1997) (quoting State v. Mollichi, 132 Wash.2d 80, 90, 936 P.2d 408 (1997)).
¶ 15 Similarly, the diversion agreement was not a plea agreement, as the State argues. By statute, a plea agreement requires *526 "the entering of a plea to a charged offense or to a lesser or related offense." RCW 9.94A.421. Here, Ms. Ashue did not enter a guilty plea in exchange for her participation in the diversion program. By the terms of the agreement, Ms. Ashue stipulated to the admissibility of statements and agreed to submit to a bench trial where the judge would determine her guilt or innocence based upon the police reports alone. Importantly, she retained the right to be presumed innocent and to have the State prove every element of the offense charged beyond a reasonable doubt.
¶ 16 Pretrial Diversion Programs. Pretrial diversion programs are nonstatutory. State v. Kessler, 75 Wash.App. 634, 636, 879 P.2d 333 (1994). "Prosecutorial discretion in the charging process has historically provided a basis for informal diversion from the criminal justice system." State v. Marino, 100 Wash.2d 719, 721, 674 P.2d 171 (1984). In contrast, "deferred prosecution entails more than the charging function and does not fall solely within prosecutorial discretion." Id. at 722, 674 P.2d 171. Case law in the area of diversion is limited, and primarily addresses the due process requirements necessary for the termination of a pretrial diversion agreement. Kessler, 75 Wash.App. at 639, 879 P.2d 333; Marino, 100 Wash.2d at 725, 674 P.2d 171.
¶ 17 Pretrial diversion programs are similar to deferred prosecution programs in that they delay the prosecution of charges pending against the defendant while he or she receives treatment or therapy. Under a diversion agreement, the State agrees to dismiss the charges if the defendant successfully performs all the terms and conditions of the agreement. In exchange, the defendant typically waives certain constitutional rights, including the right to a speedy trial, and agrees to a stipulated trial in the event he or she is terminated from the diversion program. See Kessler, 75 Wash.App. at 636, 879 P.2d 333; Marino, 100 Wash.2d at 720-21, 674 P.2d 171. The terms of preprosecution diversion agreements vary depending on the circumstances of each particular case. See Kessler, 75 Wash.App. at 641, 879 P.2d 333.
¶ 18 In general, a program is considered diversionary if:
(1) It offers persons charged with criminal offenses alternatives to criminal justice or juvenile justice proceedings; and
(2) It permits participation by the accused only on a voluntary basis; and
(3) The accused has access to counsel prior to a decision to participate; and
(4) It occurs no sooner than the filing of formal charges and no later than a final adjudication of guilt; and

(5) It results in dismissal of charges, or its equivalent, if the divertee successfully completes the diversion process.
13 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 3501, at 35-36 (3d ed.2004) (emphasis added).
¶ 19 The State, acting through the prosecutor's office, enters into and supervises pretrial diversion agreements. Kessler, 75 Wash.App. at 639, 879 P.2d 333. Such agreements, as distinct from plea agreements, are not under the direct supervisory control of the trial court. Id. Under a diversion agreement, the prosecutor establishes the conditions the defendant must satisfy and supervises the program. Marino, 100 Wash.2d at 724, 674 P.2d 171. In contrast to a plea agreement, the court's role in a diversion agreement is less direct and "consist[s] primarily of assuring procedural regularity throughout the criminal justice process." Id.
¶ 20 The diversion agreement here is most appropriately characterized as a pretrial diversion agreement. It is consistent with pretrial diversion agreements as outlined in Kessler and Marino. Kessler, 75 Wash.App. at 639, 879 P.2d 333; Marino, 100 Wash.2d at 724, 674 P.2d 171. Because this diversion program is nonstatutory, there is no authority prohibiting a defendant from entering such a program after arraignment, as Ms. Ashue did. The diversion program does not violate the SRA.
¶ 21 Validity of Waiver. Next, Ms. Ashue contends that she did not knowingly, intelligently, and voluntarily waive her constitutional rights when she entered into the stipulation and waiver agreement. While Ms. *527 Ashue concedes that the trial court conducted a colloquy with her before allowing her to enter into the diversion agreement, she argues that it did not provide an adequate explanation of the specific constitutional rights she was surrendering and did not establish that she understood that she was waiving those rights. Ms. Ashue also maintains that defense counsel failed to fully explain the waiver to her. On appeal, Ms. Ashue requests that we find that her waiver of the right to a jury trial was invalid.
¶ 22 It is well established that constitutional rights are subject to waiver by an accused if he or she knowingly, intentionally, and voluntarily waives them. State v. Forza, 70 Wash.2d 69, 71, 422 P.2d 475 (1966). The burden to establish a valid waiver is upon the prosecution. State v. Wicke, 91 Wash.2d 638, 645, 591 P.2d 452 (1979).
¶ 23 "The validity of any waiver of a constitutional right, as well as the inquiry required by the court to establish waiver, will depend on the circumstances of each case, including the defendant's experience and capabilities." State v. Stegall, 124 Wash.2d 719, 725, 881 P.2d 979 (1994). The court's inquiry will also differ depending on the nature of the constitutional right at issue. Id. However, "a court must indulge every reasonable presumption against waiver of fundamental rights." City of Bellevue v. Acrey, 103 Wash.2d 203, 207, 691 P.2d 957 (1984).
¶ 24 A criminal defendant may waive his right to a jury trial if the written waiver requirement of CrR 6.1(a) is satisfied. Under CrR 6.1(a), "[c]ases required to be tried by jury shall be so tried unless the defendant files a written waiver of a jury trial, and has consent of the court."
¶ 25 Our Supreme Court held that "[w]here a defendant is demonstrably aware of the constitutional right to a jury and has expressly waived that right in writing, the waiver will be effective." Acrey, 103 Wash.2d at 208, 691 P.2d 957. The Court of Appeals in State v. Brand, 55 Wash.App. 780, 785, 780 P.2d 894 (1989) found that "[t]o date, no Washington case has required more than a written waiver. The claim that an extended colloquy on the record is required for jury waiver has been rejected each time it has been presented." And, the decision to grant or deny a motion to withdraw a previously executed jury waiver is within the trial court's discretion. City of Seattle v. Williams, 101 Wash.2d 445, 452, 680 P.2d 1051 (1984).
¶ 26 Unchallenged Finding. Here, Ms. Ashue entered into a written pretrial diversion agreement. The agreement sets forth the constitutional rights being waived: the right to a speedy trial, the right to contest the validity of the arrest and any search and seizure, the right to a hearing to determine the voluntariness and the admissibility of statements made, and the right to a jury trial. Above Ms. Ashue's signature is the statement:
I have read or had read to me this Stipulation and Waiver. My attorney has fully explained and discussed all of the above paragraphs with me. I understand them all and agree to them to enter into this Friendship Diversion Program. I have made this decision freely and voluntarily. No one has threatened me or promised me anything other than what is contained in this Stipulation and Waiver Agreement.
CP at 51. Further, the trial court asked Ms. Ashue what her understanding was of the agreement before allowing her to enter into the program. Ms. Ashue replied that she was agreeing to complete the program and follow all of the program conditions and that if she was successful the charges would be dismissed. Additionally, the trial court asked Ms. Ashue if she understood that if she was not successful in completing the program, that all the State was going to have to do was to hand forward the police reports, and that a finding of guilt or innocence would be made upon those reports alone.
¶ 27 Moreover, the trial court made a finding that "the 4/28/07 stipulation and waiver agreement was knowingly and intelligently and voluntarily agreed to and entered by the defendant." CP at 19. Unchallenged findings are deemed verities on appeal. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994). Generally, findings are viewed as verities provided there is substantial *528 evidence in the record to support the findings. Id. An appellate court reviews only those facts to which the appellant has assigned error. State v. Brockob, 159 Wash.2d 311, 343, 150 P.3d 59 (2006). Because this finding was not properly challenged, it is treated as a verity on appeal. State v. Acrey, 148 Wash.2d 738, 745, 64 P.3d 594 (2003).
¶ 28 Effective Assistance of Counsel. Ms. Ashue contends that her representation was ineffective because defense counsel: (1) used coercion tactics in order to convince her to accept the diversion agreement; (2) failed to adequately explain the diversion agreement to her or provide a full explanation of the constitutional rights she was surrendering; (3) failed to recognize she did not understand the agreement; (4) assisted her in entering into a diversion program that was not authorized by the SRA; and (5) lacked competence in handling criminal matters. Ms. Ashue asserts that as a result of defense counsel's deficient performance, she entered into a diversion agreement she did not understand. Consequently, she argues that defense counsel's deficient conduct prejudiced her because under the agreement she waived the right to a jury trial and the right to challenge the State's evidence.
¶ 29 The Sixth Amendment guarantees criminal defendants the right to the assistance of counsel. U.S. CONST. amend. V. A criminal defendant's constitutional right to counsel includes the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We review claims for ineffective assistance of counsel de novo. State v. Shaver, 116 Wash.App. 375, 382, 65 P.3d 688 (2003).
¶ 30 When evaluating a claim of ineffective assistance of counsel, Washington follows the two-prong test set forth by the United States Supreme Court in Strickland. Strickland, 466 U.S. at 687, 104 S.Ct. 2052; State v. Thomas, 109 Wash.2d 222, 225, 743 P.2d 816 (1987). In order to satisfy the Strickland test, a defendant must prove:
(1) that defense counsel's conduct was deficient, i.e., that it fell below an objective standard of reasonableness; and (2) that the deficient performance resulted in prejudice, i.e., that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceeding would have differed.
State v. Reichenbach, 153 Wash.2d 126, 130, 101 P.3d 80 (2004). Both prongs must be met in order to satisfy the test. Brockob, 159 Wash.2d at 344-45, 150 P.3d 59.
¶ 31 To establish that her counsel was ineffective, Ms. Ashue must demonstrate how defense counsel's performance was deficient. Reichenbach, 153 Wash.2d at 130, 101 P.3d 80. Ms. Ashue, however, makes no compelling argument that her counsel's representation was unreasonable under prevailing standards.
¶ 32 Here, counsel's decision to enter into a diversion agreement could be characterized as legitimate trial strategy or tactics. Although deliberate tactical choices may constitute ineffective assistance of counsel if they fall outside the wide range of professionally competent assistance, "exceptional deference must be given when evaluating counsel's strategic decisions." State v. McNeal, 145 Wash.2d 352, 362, 37 P.3d 280 (2002).
¶ 33 In general, a stipulation as to facts is a tactical decision. State v. Mierz, 127 Wash.2d 460, 476, 901 P.2d 286 (1995). In Mierz, the court declined to find that defense counsel's decision to agree to a trial on stipulated facts was ineffective assistance of counsel. Id. The court observed that "[a] stipulation as to facts may represent a tactical decision which may or may not bear fruit." Id. In addition, a waiver of the right to a jury trial is a tactical decision. State v. Likakur, 26 Wash.App. 297, 303, 613 P.2d 156 (1980). Our Supreme Court has stated that whether the accused should waive his or her right to a trial by jury is "within the area of judgment and trial strategy and as such rests exclusively in trial counsel." State v. Thomas, 71 Wash.2d 470, 471, 429 P.2d 231 (1967).
¶ 34 Nothing in the record indicates that the diversion agreement here was improper or unauthorized by the SRA. Moreover, the court found that Ms. Ashue's acceptance of *529 the stipulation and waiver agreement was made knowingly, intelligently, and voluntarily. Defense counsel was not incompetent in assisting Ms. Ashue in entering into the program. Ms. Ashue has failed to overcome the presumption that legitimate strategic or tactical reasons existed to explain defense counsel's performance.
¶ 35 Finally, Ms. Ashue argues that defense counsel used coercion tactics and failed to discuss the requirements of diversion or the consequences of signing the agreement. She maintains that had she actually understood the agreement, she never would have signed it. Her assertion is not supported by the record. When asked by the trial court whether she read the agreement or whether her attorney read it to her, she stated that her attorney read it to her. Significantly, Ms. Ashue was able to convey, in her own words, her understanding of the diversion agreement to the trial court. Ms. Ashue knew that if she successfully completed the diversion program, the charges against her would be dismissed; she also understood that her guilt or innocence would be determined at a bench trial if she was terminated from the program. Most importantly, the trial court found that Ms. Ashue knowingly, intelligently, and voluntarily entered into the diversion agreement.
¶ 36 Because Ms. Ashue failed to establish deficient performance, her claim of ineffective assistance of counsel is without merit.
¶ 37 We affirm.
WE CONCUR: BROWN, J., and THOMPSON, J. Pro Tem.
NOTES
[1] The document was titled "Stipulation and Waiver Agreement for Diversion Continuance." Clerk's Papers (CP) at 49-52.
[2] RCW 9.94A.421 states, in part:

The prosecutor and the attorney for the defendant, or the defendant when acting pro se, may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea to a charged offense or to a lesser or related offense, the prosecutor will do any of the following:
(1) Move for dismissal of other charges or counts;
(2) Recommend a particular sentence within the sentence range applicable to the offense or offenses to which the offender pled guilty;
(3) Recommend a particular sentence outside of the sentence range;
(4) Agree to file a particular charge or count;
(5) Agree not to file other charges or counts; or
(6) Make any other promise to the defendant, except that in no instance may the prosecutor agree not to allege prior convictions.