

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36274-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELILA ELLEN MARIE REID, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. —Delila Reid appeals her conviction for second degree possession of stolen property. We find that the prosecutor exceeded the bounds of permitted argument about missing witnesses but that it was harmless. We find no other error or abuse of discretion and affirm.

FACTS AND PROCEDURAL BACKGROUND

In the summer of 2017, Roger Silva and Christopher Lacelle were employed by Hayden Homes as project manager and assistant project manager, respectively, of residential construction underway in the Moses Pointe area of Moses Lake. In July, they

became concerned that lumber and other building materials were regularly going missing from homes under construction. They set up game cameras in an effort to determine who was removing materials from the sites.

When materials were missing on July 24, they checked the cameras and discovered pictures of people loading material after hours into the bed of an older Chevrolet truck. The truck had no lumber racks and became overloaded, with materials extending over the tailgate and exceeding the height of the cab. Because Messrs. Silva and Lacelle were convinced the truck could not travel far, they drove around looking for it. They located it three or four miles away, parked at a residence. All of the material photographed in the truck by the game camera remained in the bed of the truck. The men called the Grant County Sheriff's Office to report the stolen property and its location, and Deputy Nicholas Overland and another officer responded.

When Deputy Overland arrived, Delila Reid was outside the residence and spoke with the deputy. Ms. Reid admitted she had collected the building materials in the truck and elsewhere on her property from construction sites, but claimed she had permission to do so. When Mr. Silva and Mr. Lacelle were asked by Deputy Overland to join the conversation, Mr. Silva recognized Ms. Reid as someone who had spoken to him several months earlier about wanting to take "short tiny pieces" of scrap lumber. Report of

2

Proceedings (RP)[1] at 73. Mr. Silva would later testify that he told her scrap lumber is placed in a garbage trailer, and she was welcome to take scrap from the garbage trailer.

After Mr. Silva and Mr. Lacelle joined Deputy Overland's conversation with Ms. Reid, discussion ensued about where Ms. Reid had obtained the materials, and with whose permission. Ms. Reid claimed that any materials taken from Hayden's job sites was with the permission of a six foot tall Hispanic male who wore a cowboy hat. She did not know his name. She told Deputy Overland she did not object to the owner of the materials retrieving them, but in the conversation with Mr. Silva, she disputed how much of the material was from Hayden jobsites. Mr. Silva and Mr. Lacelle arranged for three trucks to retrieve materials that the men identified as Hayden's.

In October 2017, Ms. Reid was charged with second degree possession of stolen property. Brett Bierley was court-appointed to serve as her lawyer.

An omnibus hearing was held on April 10, 2018, at the inception of which Mr. Bierley provided the court with a waiver of jury trial signed by Ms. Reid.[2] The trial court engaged in the following dialogue with Ms. Reid:

> [THE COURT:] Ms. Reid, this document has a signature on it. Is that your signature?

---

[1] Unless otherwise indicated, "RP" references are to the report of the CrR 3.5 hearing and trial.

[2] Her signed waiver stated, "Having been advised by the Court of my right to trial by jury and having had an opportunity to consult with counsel, I do hereby, with the approval of this Court, waive my right to a trial by jury." Clerk's Papers at 17.

3

THE DEFENDANT:  Yeah.

THE COURT:  All right.  And you understand that by, in essence, signing the document you're waiving your right to have this matter decided by a jury of 12 individuals, your peers?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And you're also agreeing, in essence, for a judge, such as myself, or another judge, to actually review the evidence and then make a decision about your case?

THE DEFENDANT:  Yes.

THE COURT:  All right.  So I'm accepting then the Waiver of Jury Trial as presented.

RP (Apr. 10, 2018) at 4-5.

The case proceeded to a one-day bench trial a little over a year after the alleged theft had occurred.  On the morning of trial, defense counsel informed the court that Ms. Reid wished to bring a motion for new counsel.  The trial court commented that there had been six hearings at which trial continuances were granted and expressed surprise that the request was being made so late.  Asked by the trial court why she believed she needed new counsel, Ms. Reid told the court:

I don't really understand everything that's going on with all this.  [My lawyer] just barely showed me things, facts and findings, I haven't gotten none of my paperwork or anything, and I just don't feel like he's representing me or the things that I've told him about, he hasn't checked into on my—for me, you know, or made me feel comfortable enough to even be coming here to trial right now.

RP at 19. The State opposed the motion, stating that two lengthy continuances had been agreed to afford the defense additional time to investigate. The prosecutor told the court he had four witnesses ready to go, who took time off of work to be present.

The trial court questioned Ms. Reid about specific examples of problems with Mr. Bierley's representation and she identified three. First, she said, he had not located the construction worker who allegedly gave her permission to take materials from Hayden's site. She acknowledged she did not know the construction worker's name. Second, she accused Mr. Bierley of not following up when she told him Hayden was overstating the amount and value of wood taken from its sites. Asked if there was anything else, she voiced her third complaint:

> [Y]ou know, just showing me the stuff and making me feel comfortable with this, with the whole him being my attorney, you know, I want someone who I feel like is trying to represent me, not someone who is just like, oh, well.

RP at 22.

Asked to respond, Mr. Bierley told the court his investigator met with Ms. Reid and worked for several hours trying to locate and interview the witnesses she provided. He said he believed they had "investigated this case as fully as [they] were able." RP at 25. Ms. Reid agreed that she had met with the defense investigator.

As for the value of the building materials, Mr. Bierley observed that it was not his burden to prove its value, but he had looked into her claim that Hayden was overstating

5

the amount and value of materials taken from its site.  He told the court that in addition to hearings he had attended with Ms. Reid, his notes documented several in-person meetings and phone calls with her.  He said it was his "practice to keep [his] clients advised of the status of their case that's going on and [he had] done that in this case."  RP at 27.

After this questioning, the trial court said to Ms. Reid:

> [I]n general, it's not a defense attorney's job to say, I truly believe my client is innocent, or I truly don't believe they're innocent.  They're not there to make that conclusion. . . .  [T]heir job is to basically see what the state has and determine whether or not the state is able to prove the allegation that's been raised against you, and to make sure that they did it lawfully.

RP at 32.  Ms. Reid replied to the court's explanation of her lawyer's job by saying,

> So as far as doing his job, like you're saying, yeah, he's done his job as far as that's concerned.  But as far as like making me feel like, okay, we're ready to go through this and we're comfortable and he understands me, no, he has not.

RP at 34.

The trial court stated it was unable to identify any breach of a duty by Mr. Bierley or anything a new attorney would do differently, and denied the motion.

The State called as witnesses Mr. Silva, Mr. Lacelle, the owner of a home who had seen Ms. Reid taking building materials from a Hayden home site, and Deputy Overland. Mr. Silva testified that he knew of no one working on his job site who met Ms. Reid's description of the cowboy-hat wearing man who allegedly gave her permission to take

6

building materials. He said no one but he or Mr. Lacelle had authority to give Ms. Reid permission to take anything.

Ms. Reid testified in her own behalf. She acknowledged taking full-size lumber and other materials from construction sites, but claimed she was given permission to take full-size materials when the materials had knots, cracks, water stains, were warped, or when they were not the size or type needed for a job. She claimed that much of the material Hayden claimed was taken from its sites was taken from a different site, where she received permission from a "shorter Hispanic guy" whose name she did not know. RP at 125.

During his rebuttal closing argument, the prosecutor argued that Ms. Reid had failed to identify the "mythical," "magical" people who gave her permission to take building materials, drawing repeated objection from the defense. RP at 160-61. The prosecutor responded that it was legitimate "missing witness" argument. The trial court did not sustain the defense objections, but told the prosecutor, "I don't know if I fully agree with that at this point," and "I don't know if this is really moving me." *Id.*

At the conclusion of closing argument, the trial court found Ms. Reid guilty, explaining that it found the materials taken were not damaged or scrap and it was not credible that persons in control at the job sites would have given Ms. Reid permission to take them. Written findings and conclusions were later entered. Ms. Reid appeals.

ANALYSIS

I.  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTION TO
APPOINT NEW COUNSEL

Ms. Reid's first assignment of error is that the trial court erred in denying her

motion to appoint new counsel.  We review a denial of a motion for new counsel for

abuse of discretion.  *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 723, 16 P.3d 1

(2001) (*Stenson* II).

The counsel clause of the Sixth Amendment to the United States Constitution

provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have

the Assistance of Counsel for his defence.'"  *Strickland v. Washington*, 466 U.S. 668,

685, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (quoting U.S. CONST. amend VI).  The

Sixth Amendment "guarantees defendants in criminal cases the right to adequate

representation, but those who do not have the means to hire their own lawyers have no

cognizable complaint so long as they are adequately represented by attorneys appointed

by the courts." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109

S. Ct. 2646, 105 L. Ed. 2d 528 (1989).  A defendant is not entitled to a "meaningful

attorney-client relationship" or "rapport" with her court-appointed counsel.  *Morris v.

Slappy*, 461 U.S. 1, 13, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983).

Courts are only required to grant a motion for substitute counsel "when counsel

and defendant are so at odds as to prevent presentation of an adequate defense."  *State v.*

8

*Stenson*, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997) (*Stenson* I). Courts consider "(1) the extent of the conflict, (2) the adequacy of the inquiry, and (3) the timeliness of the motion." *Stenson* II, 142 Wn.2d at 724.

Having waited until the morning of trial to raise the issue, the third factor—timeliness—clearly weighs against Ms. Reid.

The second factor, adequate inquiry, also weighs strongly against her. An adequate inquiry must include a full airing of the defendant's concerns and a meaningful inquiry by the trial court. *State v. Cross*, 156 Wn.2d 580, 610, 132 P.3d 80 (2006), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018). It is hard to imagine what more the trial court could have done to meet that standard. It patiently encouraged Ms. Reid to identify every concrete example she could of problems experienced with Mr. Bierley, invited Mr. Bierley's responses, and gave Ms. Reid the opportunity to reply. It questioned her about other possible problems.

Ms. Reid argues only that because Mr. Bierley and the prosecutor were present, "[she] was not free to explain the depth of the breakdown of communication." Br. of Appellant at 10. Washington cases permit, but do not require, private questioning about the nature of the problem. *Cross*, 156 Wn.2d at 610 (the inquiry "*may* be done in camera" (emphasis added)). There is nothing in the record to suggest that private questioning was needed or would have been helpful.

9

As for the first factor, the extent of the conflict, Ms. Reid attaches far too much significance to a single trial court statement about a "breakdown in communication."[3] Use of the term was perhaps unfortunate, since "a complete breakdown in communication between the attorney and the defendant" is recognized as good cause warranting substitution of counsel. *Stenson* I, 132 Wn.2d at 734. The trial court was responding to Ms. Reid's pro se motion, however, and did not speak of a "complete" breakdown in communication. It is clear in context that he was speaking in colloquial terms, not in terms of the standard for requiring replacement of counsel. It is also apparent from Ms. Reid's answers to the trial court's questions that Mr. Bierley was in ongoing communication with her, even if his communications did not make her feel comfortable.

"Feeling comfortable" was Ms. Reid's overarching concern. *See* RP at 19 ("he hasn't . . . made me feel comfortable enough to even be coming here to trial"), 22 (asked what else she had wanted counsel to do, "just showing me the stuff and making me feel comfortable with this"), 23 (having told Mr. Bierley, "I'm not comfortable"), 24 ("I didn't feel comfortable and I don't feel like I'm being represented"), 33 ("I mean just so

---

[3] The trial court stated at one point, "It seems to be at this point there's a *breakdown in some sort of communication*, and I'm not saying it's anybody's fault, it just seems, at least from what you're telling me, that there's *some type of breakdown in your communication*." RP at 32 (emphasis added).

that there's—so that I feel more comfortable. Obviously, you can tell I don't feel comfortable and I haven't felt comfortable"), 34 ("as far as like making me feel like, okay, we're ready to go through this and we're comfortable and he understands me, no, he had not"), 35 ("my problem is I just don't feel comfortable, you know").

"The general loss of confidence or trust alone is not sufficient to substitute new counsel." *Stenson* I, 132 Wn.2d at 734. That is all that was shown here. The trial court did not abuse its discretion in refusing to appoint new counsel.

II.    THE RECORD REFLECTS A KNOWING AND VOLUNTARY WAIVER OF THE RIGHT TO JURY TRIAL

Ms. Reid challenges the validity of her waiver of the right to jury trial, pointing out that it is the State's burden to demonstrate that her waiver was knowing, intelligent, voluntary, and free from improper influences. *State v. Stegall*, 124 Wn.2d 719, 725, 881 P.2d 979 (1994). We review a jury trial waiver de novo. *State v. Benitez*, 175 Wn. App. 116, 128, 302 P.3d 877 (2013).

The right to jury trial is easier to waive than, e.g., waiving the right to counsel or entering a guilty plea. *State v. Pierce*, 134 Wn. App. 763, 772, 142 P.3d 610 (2006). Competent defendants and experienced counsel may have good reasons to waive a jury trial. *Id.* A colloquy conducted on the record is not required. *Stegall*, 124 Wn.2d at 725. "[O]nly a personal expression of waiver from the defendant" is required. *Pierce*, 134 Wn. App. at 771. While not determinative, a written waiver is "strong evidence" that the

11

defendant validly waived the jury trial right. *Id.* An attorney's representation that her client knowingly, intelligently, and voluntarily relinquished his jury trial rights is relevant. *Id.*

In this case, we have Ms. Reid's signed jury waiver and the colloquy in which she affirmed signing the waiver and expressed her understanding that a judge, rather than 12 jurors, would decide her guilt or innocence. Her waiver stated that she had the opportunity to consult with counsel. The record appears adequate.

Citing *Benitez*, however, Ms. Reid argues that she was not asked by the trial court if she knew she was giving up the right to have 12 individuals find her guilty beyond a reasonable doubt, the record does not reflect that Mr. Bierley reviewed the waiver with her, and Mr. Bierley did not state his belief on the record that her waiver was knowing, intelligent and voluntary. Those facts were present in *Benitez* and were a part of evidence of knowing waiver that the court found sufficient, but the court did not suggest that any of those facts was necessary. 175 Wn. App. at 129. Moreover, the court in *Benitez* observed that a defendant is not required to be informed of the right to be proved guilty beyond a reasonable doubt, since that right exists in all trials. *Id.*

"To date, no Washington case has required more than a written waiver." *State v. Brand*, 55 Wn. App. 780, 785, 780 P.2d 894 (1989), *rev'd*, 120 Wn.2d 365, 842 P.2d 470 (1992). This remains true. *See State v. Ashue*, 145 Wn. App. 492, 503, 188 P.3d 522

(2008). The record includes a clear personal expression of waiver, confirmed by the court, that Ms. Reid gives us no reason to doubt. A valid waiver was shown.

III.    To the limited extent that the prosecutor's closing argument shifted the burden of proof, the action was harmless

Prosecutorial misconduct is not attorney misconduct in the sense of violating rules of professional conduct. *State v. Fisher*, 165 Wn.2d 727, 740 n.1, 202 P.3d 937 (2009). It is, instead, a term of art that refers to "prosecutorial mistakes or actions [that] are not harmless and deny a defendant [a] fair trial." *Id.* To succeed on a prosecutorial misconduct claim, an appellant has the burden of establishing that the prosecutor's conduct was improper (as being at least mistaken) and was prejudicial. *Stenson* I, 132 Wn.2d at 718-19.

The State may not imply that a defendant has a burden to produce evidence. *State v. Montgomery*, 163 Wn.2d 577, 597, 183 P.3d 267 (2008). But the missing witness doctrine allows the State to "point out the absence of a 'natural witness' when it appears reasonable that the witness is under the defendant's control or peculiarly available to the defendant and the defendant would not have failed to produce the witness unless the testimony were unfavorable." *Id.* at 598. In such a case, the trier of fact may infer that the witness's testimony would have been unfavorable. When a defendant is the only person who can reasonably determine the identity of a witness, the witness is peculiarly available to the defendant. *State v. Blair*, 117 Wn.2d 479, 491, 816 P.2d 718 (1991).

This was a bench trial, so there was no ruling on jury instructions. If the prosecutor believed he was entitled to argue a "missing witness" inference, closing argument was a reasonable time for him to say so, and for defense counsel to respond. We presume on appeal from a bench trial that the trial judge did not rely on inadmissible matters when reaching a decision. *State v. Gower*, 179 Wn.2d 851, 855, 321 P.3d 1178 (2014). A trial court's ruling on a claim of prosecutorial misconduct is reviewed for abuse of discretion. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014).

At a minimum, the prosecutor's rebuttal argument went beyond the permitted missing witness inference when he stated that Ms. Reid "need[s] to produce some witnesses that she doesn't produce." RP at 160. *See State v. Gregory*, 158 Wn.2d 759, 147 P.3d 1201 (2006), *overruled on other grounds by State v. W.R.*, 181 Wn.2d 757, 336 P.3d 1134 (2014) (where prosecution is arguing the inference, it must take particular care to avoid any suggestion of burden shifting). It is apparent from the trial court's comments that it looked askance at the burden shifting argument, however. Its findings and conclusions make clear that it found incredible that *any* construction site manager would give Ms. Reid permission to take large amounts of valuable, usable construction materials. Ms. Reid does not demonstrate the required prejudice.

14

No. 36274-4-III
*State v. Reid*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, C.J