**FILED**
**JULY 16, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  36732-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VRAJESH K. PATEL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Trial of five criminal charges against Vrajesh Patel was deferred

by agreement for a year, subject to Dr. Patel waiving rights and complying with

conditions during the deferral period.  On the last day of the deferral period, the State

gave notice of noncompliance.  At its request, the trial court found Dr. Patel guilty and

entered a judgment and sentence. Dr. Patel challenges the timeliness of the State's action and the trial court's finding of noncompliance. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In October 2017, Vrajesh K. Patel, M.D., was charged with three counts of assault in the second degree and two counts of harassment, all involving a woman with whom he had been romantically involved. On February 21, 2018, he and the State agreed to a one-year stipulated order of continuance (SOC) that was approved and entered by the superior court. Among terms and conditions with which he was required to "fully comply during the deferral period, which ends on 2/21/19" was that he

> shall continue to undergo and will successfully complete and follow any further treatment recommendations in his DV/anger management treatment with First Step Community Counseling Services in Kennewick, WA and the Moral Reconation Therapy Program through WW District Court. He should also continue to follow any substance abuse treatment recommendations, and provide proof of successful completion of any previous substance abuse treatment.

Clerk's Papers (CP) at 55 (boldface omitted).

On February 19, 2019, the prosecutor learned that Dr. Patel had admitted when deposed in a civil suit brought by his victim that he was untruthful during the SOC chemical dependence evaluation performed in May 2018. Specifically, the prosecutor was provided with information that Dr. Patel testified that all of the following information provided to evaluator Judi Rozsa was false: he told her that drinking did not cause him problems prior to August 2017, that he never tried any drugs in his life except

2

alcohol, that he cut back on tobacco use to only three cigarettes a day in 2013, and that he had no arrests prior to August 2017.  He also failed to tell Ms. Rozsa about employee assistance program (EAP) assessments that had been required of him by his former employer.  Based on the information provided, Ms. Rozsa had provided the following level of care recommendation:

> [I]t appears that Dr. Patel does not fit the DSM V diagnostic criteria for an alcohol or other substance use disorder.  It appears that the incident which precipitated his arrival in my office was the only time in his life that drinking has caused him any problems, or was at least related to a problem that he got into.  He has not had any problems ceasing his use of this drug.  In addition, Dr. Patel's drinking in general did not appear to be excessive anyway.
>
> I am therefore going to refrain from recommending any formal therapeutic intervention.

CP at 138.

Two days later, on February 21, 2019—the last day of the deferral period—the State filed a notice of noncompliance signed by Dr. Patel's probation officer and a motion for an order to show cause why the court should not find him guilty of the deferred charges.  A summary of Dr. Patel's falsehoods concluded, "Patel's conduct completely contravenes the purpose and goal of the SOC, which requires Patel complete [sic] treatment recommended by his evaluators.  Patel should not be deemed to have successfully completed his SOC conditions."  CP at 41.

3

Dr. Patel responded with a motion to strike, arguing that not only had he *not* violated any condition of the SOC, but the State's action also came too late under paragraph 1.9 of the SOC, which provides in part:

> I agree to show cause at any time *prior to 2/21/19*, why I should not be found to have failed to comply with one or more of the conditions set forth in paragraph 1.8 herein.

CP at 56 (emphasis added).

At a hearing at which the trial court entertained both the motion to strike and the order to show cause, it rejected Dr. Patel's challenges and entered an order finding a willful violation of the terms of the SOC, found him guilty of the criminal charges, and set a sentencing hearing.

Dr. Patel moved for reconsideration. In a letter opinion, the trial court denied the motion but found it valuable to "revisit its thinking on its ruling" and explained why its hearing had been a sufficient evidentiary hearing and why it found the evidence sufficient to prove a violation of the terms of the SOC. CP at 160.

The court later sentenced Dr. Patel to a standard range sentence of 60 months' confinement and 18 months of community custody. Dr. Patel appeals.

4

ANALYSIS

I.      THE "SHOW CAUSE" PROVISION RELIED ON BY DR. PATEL DID NOT REQUIRE THE
        STATE TO ACT BEFORE FEBRUARY 21, 2019

Dr. Patel's contention that the State acted too late requires us to construe the

language of the SOC.  Pretrial diversion agreements, like plea agreements, are contracts,

and are construed by applying contract principles.  *See State v. Sledge*, 133 Wn.2d 828,

839, 947 P.2d 1199 (1997).  The goal of contract interpretation is to give effect to the

parties' intent.  *State v. Oliva*, 117 Wn. App. 773, 779, 73 P.3d 1016 (2003).  Interpreting

a contract requires courts to not only "look at the language of the agreement," but also to

> view "the contract as a whole, the subject matter and objective of the
> contract, all the circumstances surrounding the making of the contract, the
> subsequent acts and conduct of the parties to the contract, and the
> reasonableness of respective interpretations advocated by the parties."

*Id.* (quoting *In re Marriage of Litowitz*, 146 Wn.2d 514, 528, 48 P.3d 261 (2002)).  Issues

concerning the interpretation of a pretrial diversion agreement are questions of law that

we review de novo.  *See State v. Bisson*, 156 Wn.2d 507, 517, 130 P.3d 820 (2006)

(interpreting plea agreement).

Dr. Patel contends that the SOC requires the State to catch and act on a violation

of a deferral condition *within* the one-year deferral period, failing which he has a right to

dismissal.  Fairly read, however, the SOC creates rights that arise *after* the deferral

period: if Dr. Patel has violated a deferral condition, the State is entitled to submit the

criminal charges to the court; if Dr. Patel has complied, he is entitled to dismissal of the

charges. Having learned of his violation so late in the deferral period, the State did not

need to initiate a show cause procedure. Under the plain language of the agreement, it

could have submitted the charges to the court. Dr. Patel, believing himself to have

complied, could have argued his right to dismissal of the charges. The following

provisions support this construction of the SOC:

> 1.8—Conditions of Deferral of Prosecution:
>
> I agree to the deferral of the prosecution of the charge(s) in the above-entitled action on the following conditions with which I must fully comply during the deferral period, which ends on 2/21/19:
>
> . . . .
>
> (b)      Vrajesh K. Patel . . . should also continue to follow any substance abuse treatment recommendations, and provide proof of successful completion of any previous substance abuse treatment.
>
> . . . .
>
> 1.9—Dismissal of Charges:
>
> I understand that the charge(s) against me will be dismissed at the end of the deferral if I have fully complied with the conditions set forth in paragraph 1.8 herein.
>
> . . . .
>
> 1.10—Waiver of Jury Trial:
>
> I FULLY UNDERSTAND AND AGREE THAT THE STATE'S CASE WILL BE SUBMITTED ON THE RECORD IF I FAIL TO COMPLY WITH ANY OF THE CONDITIONS SET FORTH IN PARAGRAPH 1.8 HEREIN. . . .

CP at 55-56 (boldface omitted). Following signatures of Dr. Patel, defense counsel, and

the prosecutor, and some preliminary findings, the SOC contains the following order:

IT IS HEREBY ORDERED:

2.1     The deferral period shall end on 2/21/19.  The prosecution of the charge(s) in the above-entitled action is deferred on the following conditions:

> . . . .

> (b)     Vrajesh K. Patel . . . should also continue to follow any substance abuse treatment recommendations, and provide proof of successful completion of any previous substance abuse treatment.

> . . . .

2.2     The charge(s) in the above-entitled matter will be dismissed after conclusion of the deferral period if defendant has fully complied with the conditions set forth in paragraph 2.1 of this Order.

2.3     If defendant fails to fully comply with the conditions set forth in paragraph 2.1 of this Order, the Court will set the matter on the docket for trial.  At that time, the Court will review the materials identified in paragraph 1.11, herein, and based upon that evidence, the Court will enter judgment, and if appropriate, sentence Defendant according to law.

CP at 59-60 (boldface omitted).

Recognizing that the State might become aware of a violation before the year has passed and wish to immediately terminate the SOC and proceed with prosecution, paragraph 1.9 includes a show cause option.  In that event, it imposes a duty on Dr. Patel to submit to the early termination procedure.  The following language describes the early termination option:

> I agree to show cause at any time prior to 2/21/19, why I should not be found to have failed to comply with one or more of the conditions set forth in paragraph 1.8 herein.  I may be found in violation of any of the conditions set forth 1.8 by a preponderance of the evidence in a hearing held without a jury before any Judge or Judge pro tempore of the above-entitled Court.

I understand that the court may order the clerk of the court to issue a
bench warrant for my arrest if I fail to appear at any show cause hearing.

CP at 56. It is unsurprising that a response to the show cause option would be required

"prior to 2/21/19" because on and after February 21, 2019, the State could simply submit

its case on the record under paragraph 1.10 of the agreement.

The dismissal provision could have been more artfully drafted by making clear

that Dr. Patel was entitled to judicial review of a claimed violation whether or not the

show cause procedure was followed. But the right to judicial review would exist whether

provided by the agreement or not. *See State v. Marino*, 100 Wn.2d 719, 724, 674 P.2d

171 (1984).[1] Viewed as a whole, the SOC is reasonably read to permit the State to

proceed with prosecution at the conclusion of the deferral period whether or not it

initiated a show cause proceeding prior to February 21, 2019.

II.    THE TRIAL COURT PROPERLY CONCLUDED THAT DR. PATEL VIOLATED THE SOC BY
       BEING UNTRUTHFUL WHEN EVALUATED FOR TREATMENT

Dr. Patel's remaining assignment of error is to the trial court's findings and

conclusion that he violated the SOC by failing to be truthful with his substance abuse

treatment provider on May 1, 2018. As elaborated upon by its letter denying Dr. Patel's

---

[1] Under pretrial diversion agreements like the SOC, the prosecutor establishes the
conditions the defendant must satisfy and supervises performance. *State v. Ashue*, 145
Wn. App. 492, 501, 188 P.3d 522 (2008). When a prosecutor decides to revoke a
diversion agreement, however, the defendant is entitled by due process to an independent
judicial determination that the diversion agreement was violated, by a preponderance of
the evidence, with the burden of proof on the State. *Marino*, 100 Wn.2d at 725.

8

motion for reconsideration, the trial court found that the doctor's "lies were directed to the people who were in the best position to know whether he needed treatment for drinking. As a result of his untruthfulness he deprived them of the opportunity to make appropriate treatment recommendations." CP at 161. The trial court found the misrepresentations to be material and that they "were such that the Court can only infer that they were done with the intent to mislead the listener into thinking that he had no drinking problem—a denial that is characteristic of those who do." *Id.*

Dr. Patel does not deny that he *was* untruthful; instead, he argues that it was not a condition of the SOC that he be truthful. Whether this was an implied obligation under the SOC implicates the legal effect of the contract, an issue we review de novo. *Yeats v. Estate of Yeats*, 90 Wn.2d 201, 204, 580 P.2d 617 (1978).

Dr. Patel acknowledges that an implied duty of good faith and fair dealing exists in every contract. Br. of Appellant at 17 (citing *Sledge*, 133 Wn.2d at 839). The implied duty does not inject substantive terms into the parties' contract; it requires only that the parties perform in good faith the obligations imposed by their agreement. *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991).

It could hardly be clearer that to perform *in good faith* his obligation to follow substance abuse treatment recommendations, Dr. Patel needed to provide truthful information to the treatment evaluator. The trial court properly concluded that the deferral condition was violated.

9

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, C.J.